SALLEE *v.* SECURITY BANK & TRUST COMPANY.

Opinion delivered June 21, 1915.

1. BILLS AND NOTES—CONSIDERATION—PURCHASE OR LOAN—QUESTION OF FACT.—In an action on a note, of which the holder claimed to be a *bona fide* holder in due course, the issue of whether the note was taken by the holder as security for a loan, or by way of purchase, is, under the evidence, a question for the jury.

2. BILLS AND NOTES—CONSIDERATION—NOTICE.—Where a note was presented to appellee for discount, by one who claimed to be acting for the payee, there was nothing to put the appellee upon notice that the note was executed without consideration, and that endorsements thereon were for accommodation.

Appeal from Clay Circuit Court; *W. J. Driver,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellee brought this suit against the appellants on a promissory note for $1,155 payable to the order of M. W. Cobbs, bearing interest at the rate of 10 per cent per annum from maturity until paid, signed by the Morton Mercantile & Handle Company, through Wm. M. Isom, its president and manager. The note was indorsed by Rolfe, Block, Cobbs and R. P. Sallee. The appellee alleged that it purchased the note in good faith and for value prior to its maturity, in due course of business. It alleged that the note was past due, and that demand had been made of appellants for its payment, and they had refused.

The appellants answered. The answer set up that the maker of the note agreed with the appellee to pay interest in advance at the rate of 10 per cent per annum, and a bonus of $50 for the use and forbearance of said

money; that the payee of the note had no interest in it, and only permitted the note to be made payable to him in order to carry out the corrupt agreement made by the appellee with the handle company through its president; that the loan was made by the appellee to the handle company knowingly and intentionally, with the corrupt intention to receive a greater rate of interest than 10 per cent. per annum, and that the contract was therefore void for usury. Appellants also denied specifically the allegations as to the purchase of the note.

Appellee replied to the answer, in which it set up in detail the circumstances under which it alleged that it purchased the note. It denied that it had any knowledge whatever that Cobbs, the payee, had no real interest in the note or the funds arising therefrom, but stated in substance that it purchased the note at an agreed discount of $105, in the usual course of banking business, before the maturity thereof, and in good faith, without any agreement whatever to make a loan of money to the maker, the handle company, and reiterates that it purchased the note as the property of the payee.

G. O. Light, cashier of the appellee bank, testified in substance that the note in controversy was first presented to him for discount by Wm. M. Isom, who purported to represent Cobbs. He told Isom that he would buy the note if Cobbs would take $1,050 for it. Witness objected to the note in the form it was first presented on account of the name of the original payee appearing to have been erased and another substituted. Isom requested witness to fix up a note payable to Cobbs, which witness did. Passing over unnecessary details in his testimony, it suffices to say that the witness testified that at the time of the negotiations there was no conversation between witness and Isom about lending the Morton Mercantile & Handle Company any money, or about the bank's lending Cobbs any money. The proposition came to witness purely as a proposition of discount from M. W. Cobbs. The note was payable to Cobbs, and nothing was said about borrowing or loaning. It was a straight sale and purchase. The

matter of the amount of the discount was understood before the matter was closed. Cobbs' name and the others appeared upon the note as indorsers, and he paid out the money as stated on Isom's order. He understood that Cobbs was entitled to the funds, and declined to pay same out except on his order. The matter was closed up by witness's check, as cashier, based upon a draft drawn by Isom in favor of the Wynne Bank, accompanied with an order from Cobbs to pay over the proceeds to Isom or his order.

Witness Cobbs testified on behalf of appellants substantially as follows: That the two notes had been made out in his name at the suggestion of Isom. That while the note in controversy was made payable to him (Cobbs), he was not interested in the proceeds. He denied that he ever requested or directed the appellee to discount the note for him, or to have anything to do with it. He understood that a mortgage was to be given in his favor, and Isom stated that he was going to sell the note. He signed the order for the appellee to pay over the proceeds of the note to Isom.

Witness Sallee testified that he was the last indorser. He had known Isom for two years, but was unacquainted with the other indorsers. Isom asked witness to sign the note, and, upon being informed as to who the other indorsers were, he agreed to do so. Witness understood that the money was to go to the handle company. Witness did not know anything about Cobbs. He signed the note because he had told Isom he would do so.

Witness Isom testified that the first note he presented to the appellee bank was payable to Cobbs. He told the cashier that he was willing to discount it for fifty dollars in addition to the interest, but the cashier declined to accept it because the note was defaced. The cashier stated, however, that if the note were put in proper shape, the bank would arrange to handle it. "All understood that Cobbs was used as a go-between. The last note was made payable to him." Witness informed the cashier of appellee that Cobbs was not worth the money, and that he was

not to get anything out of it, and witness was much surprised that the mortgage was drawn in Cobbs' favor when Cobbs had merely been used as a go-between for accommodation. Witness told the cashier that the money received on the note was to go to the Morton Mercantile & Handle Company. He further stated that the cashier said to him that the bank could not accept the note payable to the bank because in that shape it could not take the fifty dollars bonus. Continuing, the witness says: "The last and first notes were both payable to Cobbs, while the second was payable to the bank."

Light testified in rebuttal, denying that the matter of using Cobbs' name as a go-between was discussed between him and Isom, and further denying that there was anything said about a loan or bonus between them. He further stated that no note payable to the bank and trust company had ever been presented to the bank, and therefore he stated that it could not be true, as stated by Isom, that the second note was payable to the bank, and he therefore says they could not have refused to accept such a note, because no such note was presented.

Witness Sallee, being recalled, corroborated the testimony of Isom by stating that he had indorsed, at the request of Isom, a note for $1,155, payable to the Security Bank & Trust Company, and had returned same to Isom about the time the loan was being negotiated. But he further stated that he did not know whether the note had ever been presented to the bank and trust company. The note was indorsed by Rolfe, Block, Cobbs and himself.

The appellants asked the court to instruct the jury as follows: "(1) You are instructed that the paying and receiving a greater rate of interest than 10 per cent. per annum as a loan of money is *prima facie* evidence of a corrupt agreement, notwithstanding the parties to the loan acted in ignorance of the law." The court refused appellants' prayer, and they duly excepted.

The court instructed the jury, on its own motion, in effect that contracts for a greater rate of interest than 10 per cent. per annum were void. That if the note in contro-

versy was made as the result of a corrupt agreement entered into between the parties, whereby the one was to pay, and the other to receive more than 10 per cent. per annum for the use and forbearance of money, that the same was a loan and usurious and void; that the burden of proving usury was upon those who alleged it, and if the jury found from a preponderance of the evidence that the agreement between the handle company and plaintiff was that the note sued on was to be made to Cobbs, and that Cobbs had no interest in the note or the proceeds arising therefrom, and received no part of the proceeds, and that it was so understood between plaintiff and the handle company, that this would only constitute a cloak or cover for a usurious agreement.

Other instructions were given, presenting to the jury the issue as to whether the transaction evidenced by the note in suit was one for a loan of money or a sale of the note.

The only ground of error assigned in the motion for new trial in the ruling of the court upon the instructions is that of the court's refusal to give appellants' prayer No. 1. There was a verdict in favor of the appellee for the amount of the note and interest. Judgment was entered in its favor for that sum, and this appeal has been duly prosecuted.

*Holifield & Harrison, Killough & Lines* and *Block & Kirsch,* for appellants.

1. This was accommodation paper. Dan. on Neg. Inst. (3 ed.), § 189; Tiedeman, Bills & Notes, § 54; 107 Mass. 552. If such note is sold or discounted for more than 10 per cent, the transaction is usurious. 41 Ark. 331; Daniel Neg. Inst. (3 ed.), § 191; Tiedeman, Bills & Notes, § 54; 29 Am. & E. Enc. Law (2 ed.), 477, 478; 25 Am. & E. Anno. Cases, 886; 99 Am. Dec. 251.

*R. E. L. Johnson,* for appellee.

1. No question of accommodation paper was raised below. 101 Ark. 95; 75 *Id.* 76; 88 *Id.* 189.

2. But, if it had been, the doctrine does not apply here. The handle company was the maker of both notes,

and Cobbs was the payee. The transaction was made with Isom, and the jury has settled all questions of fact under proper instructions. Isom was Cobbs' agent in procuring the discount. 41 Ark. 331, does not apply.

3. There was no usury in the matter. 91 Ark. 458, and numerous cases cited. Appellee was simply an innocent purchaser for value, and without notice.

WOOD, J., (after stating the facts). (1) The only issue in this case was whether or not the appellee acquired the note in controversy by discount and purchase thereof, or whether or not appellee acquired the same by an agreement with the maker thereof for a loan. This issue, as to whether the appellee purchased the note or obtained the same for a loan of money, was sharply drawn, and there was a decided conflict in the evidence. The issue was properly submitted to the jury, and there was evidence to sustain their verdict.

The court did not err in refusing appellants' prayer for instruction, because that prayer assumed that the transaction in evidence was a loan of money and ignored the testimony on behalf of the appellee tending to prove that the transaction was a sale of the note.

Appellants contend that the note in controversy was offered to appellee for discount by the maker, and that this fact showed that the indorsements were for accommodation; and that inasmuch as the discount from the face value was greater than that allowed under our Constitution and statutes for a loan, the same was therefore usurious and void. To sustain this contention, appellants rely upon the case of *German Bank* v. *DeShon,* 41 Ark. 331. But it was a question for the jury as to whether the note in controversy was offered for discount and sale by the maker, and the jury have settled that issue in favor of the appellee upon evidence amply sufficient to sustain the verdict. The maker of the note was the Morton Mercantile & Handle Company, and Isom was the president of that company. But the testimony on behalf of the appellee tended to show that Isom was not proposing to discount the note for that company at all. On the contrary, the

testimony of the appellee's cashier was unequivocal to the effect that the proposition came to him purely as one of discount from M. W. Cobbs. "Isom," said he, "purported to represent M. W. Cobbs. The note was payable to Cobbs, and nothing was said about borrowing or loaning or bonus. The proposition was offered to sell me the note, and when the time came to talk business, I made a price that I could not give more than $1,050 for a $1,155 note. If Mr. Cobbs was willing to take that, I could handle the paper for him." While Isom testified that he told Light, the cashier of appellee, that he was trying to borrow the money for the Morton Mercantile & Handle Company, this conflict in the evidence made it purely a question for the jury as to whether Isom, in the negotiations with the appellee, claimed to be the agent of Cobbs, the payee of the note, or the agent of the handle company, the maker thereof. It being settled in favor of the appellee that Isom, in discounting the note in controversy, held himself out as the agent of the payee, and not of the maker, the case is thus clearly distinguished on the facts from the case of *German Bank* v. *Deshon,* upon which appellants rely for a reversal.

In that case, one Fatherly executed his note for the sum of $1,650, bearing interest at 10 per cent per annum, payable to his own order, and which was indorsed by Francis E. Ashley and A. G. DeShon. The note was executed and indorsed for the purpose of borrowing money. After the note was indorsed by Ashley and DeShon, Fatherly discounted the same for the sum of $1,608.75 to Blocher, and indorsed and delivered the note to him, and paid Blocher in addition the sum of ten dollars. Blocher thus had notice that the note had been indorsed for accommodation, and that it was being negotiated by the maker for a loan, and he agreed with the maker Fatherly, to take the note upon Fatherly, paying him in addition to the 10 per cent., the sum of ten dollars, making a greater rate of interest than that allowed to be taken for the use of money, and making the note usurious at the time it was first put in circulation. Blocher transferred the note to

the German Bank for value without notice. The bank brought suit against the maker of the note and the indorsers. Usury was set up as a defense. In that case there was a verdict and judgment declaring the transaction usurious, and in sustaining the judgment, this court said: "The jury evidently found, first, that the note sued on was transferred and delivered to Blocher by Fatherly in consideration of a loan of money; secondly, that Fatherly paid Blocher the sum of ten dollars in part consideration of the money loaned, and that in the discount of the note and the ten dollars there was paid to and received by Blocher, pursuant to an agreement coeval with the loan, more than ten per centum per annum interest for the use of the money loaned."

And in holding that the facts as thus found by the jury constituted usury, the court further said: "Where parties to a contract for a loan knowingly agree to pay and receive more than 10 per centum per annum for the use of the money borrowed, this, in the sense of the law, is a corrupt agreement. If it be the real intention of the parties to receive or reserve a given rate of interest, and that rate proves to be usurious, the contract will be void for usury, whether the parties knew the interest to be usurious or not. * * * If the note in question was transferred and delivered by Fatherly to Blocher, in consideration of money loaned, and it was void on account of usury in the hands of Blocher, it was likewise void in the hands of the German bank, notwithstanding it was transferred to the bank for a valuable consideration before maturity, and without notice of the usury."

(2) But here the facts were entirely different. The jury have found, and were warranted in finding, that the note was not presented to the appellee for discount by the maker, but that it was presented by one who claimed to be acting for the payee. Such being the fact, there was nothing to put appellee upon notice that the endorsements were for accommodation, and that the note was executed to Cobbs without any consideration therefor.

Learned counsel for the appellants assume that the uncontroverted evidence shows that the note in controversy was presented to the appellee for discount by the maker thereof. Hence, they contend here that the verdict and judgment should have been in favor of the appellants under the doctrine of the case of *German Bank* v. *DeShon, supra.* But, as we have shown, this is a misapprehension of the facts, and hence the doctrine of the above mentioned case has no application.

The trial court announced the law applicable to the evidence adduced under the issue presented, in conformity with many decisions of this court on the subject of usury. See, *Briggs* v. *Steele,* 91 Ark. 458, and cases there cited.

The judgment is correct, and it is therefore affirmed.