GRAYSON *v.* ARRINGTON.

5-817                                              286 S. W. 2d 501

Opinion delivered February 6, 1956.

*Wade Kitchens* and *W. H. Kitchens, Jr.,* for appellant.

*Warner, Warner & Ragon,* for appellee.

J. SEABORN HOLT, Associate Justice. This is a suit by appellee, Arrington, to quiet his title to the oil, gas and other minerals in and under the W½ of NW¼ of NE¼ of Sec. 19, Tp. 19 S, R 18 W, Columbia County and to remove cloud on his title created by Sheriff's deed made pursuant to an execution sale to T. S. Grayson, now deceased, and who was survived by appellants. Appellee deraigned title from the State by virtue of a tax correction deed of August 19, 1946, duly recorded, and by a mineral deed dated September 7, 1946, recorded, and made by W. C. Taylor and wife to appellee. (Taylor had previously owned both surface and minerals but had conveyed the surface, which eventually went to T. S. Grayson, and retained all minerals.)

October 30, 1945, the State conveyed by tax deed to appellee the minerals in the 20 acres here involved, but erroneously described it to be in *Range 19 when it should have been Range 18.* The State did not own any interest in Range 19, but did own the royalty in the 20 acres in Range 18, which had forfeited for the 1941 taxes. In 1946 [exact date not shown] the State filed a confirmation suit to confirm its title to delinquent lands and mineral rights described therein [under Act 119, 1935, §§ 84-1315—84-1332, Ark. Stats. 1947], Case 6439, and included the oil, gas and minerals in the W½ NW¼ NE¼, Sec. 19, Tp. 19 S, *R 19 W.*

August 22, 1946, Grayson and Foster, who claimed to be the owners of the surface and mineral rights in said 20 acre tract in *Range 19,* intervened naming Arrington and his wife as cross-defendants.

September 23, 1946, on the first day of the next term of Court, Arrington and wife appeared by their attorney Ezra Garner and filed a *disclaimer* as to any

right, title or interest in the property claimed by Grayson and Foster in *Range 19*. On the same day a decree was entered finding that Grayson and Foster owned the oil, gas and minerals in the 20 acres described as W½ NW¼ NE¼, Sec. 19, Tp. 19 S, *R 19 W*, and that on October 30, 1945, Arrington had obtained a deed from the State Land Commissioner based on a purported sale of part of said lands in Range 19, for taxes of 1941, that said deed was void for the reason that all taxes had been paid in Range 19 and had not forfeited; that the complaint filed by the State in so far as it affected said land in Range 19 should be dismissed and it was decreed that said tax deed be cancelled and the title to the oil, gas and minerals be quieted in Grayson and Foster. The *court then ordered that Grayson and Foster* recover from Arrington all costs expended by them. It appears that Arrington, appellee, was without knowledge of this decree.

Execution was issued by appellants on the decree for costs, levy was made on the mineral rights of Arrington in the 20 acre tract located in Range 18 for the purpose of satisfying the judgment and the property was sold by the Sheriff to the said Grayson for $36 and deed executed to him. From the time appellee first obtained title to the 20 acres in Range 18, up to and including 1953, he paid all taxes charged thereon. On a trial of the present suit the trial court found that the judgment against Arrington in favor of Grayson and Foster in the confirmation suit for costs was void and without effect; that the Sheriff's deed to Grayson for minerals in the 20 acre tract in Range 18 constituted a cloud on Arrington's title; decreed that the deed be cancelled and title quieted in Arrington. For reversal appellants list these three points: "First, that the judgment for costs in the confirmation suit was not void; second, that the present suit constitutes a collateral attack on the confirmation decree of September 23, 1946; and third, that the judgment for costs in the confirmation suit was within the discretion of the chancellor."

Material facts appear not to be in dispute. After a careful review of the entire record we have concluded that the findings of the Chancellor were not against the preponderance of the evidence and, therefore, that the decree must be affirmed.

The confirmation suit was instituted pursuant to the provisions of Act 119 of 1935 as amended, [§§ 84-1315—84-1332 incl., Ark. Stats. 1947] and was based thereon. Grayson and Foster intervened in that suit as provided in § 84-1322. *Section 84-1327* above provides: "Court costs and the publication fees for the notice of such confirmation suit *shall hereafter be paid from the amounts received by the State for the confirmation of title of all lands certified to the State for non-payment of taxes.*"

*Section 84-1329* provides: "All costs and fees due and payable hereunder may be paid when proof is made that the services for which the payment is made have been fully performed."

*Section 84-1330* provides: "The State Land Commissioner shall hereafter, upon proper application therefor, refund the confirmation fees paid by any person, firm, corporation, association or trustee where the title to state lands have failed."

Since the above confirmation statute provides the specific method for the payment of costs in all confirmation suits in which the State seeks to establish its title, the trial court was without authority or power to disregard the statute and adjudge the costs on the intervention against appellee and that part of the judgment, assessing the costs against appellee, was therefore void because it was beyond the power of the court to make. *Section 84-1327* above, as indicated, expressly provides that all court costs incurred in such confirmation proceedings shall be paid from the amounts received by the State for the confirmation of title of all lands certified to the State for non-payment of taxes, and directed the Land Commissioner to refund costs paid by any person where the State's title has failed.

The general statute, in effect, allowing costs to be assessed by the trial court in the exercising of its sound discretion, § *27-2308, Ark. Stats. 1947,* relied upon strongly by appellant, has no application here where the court is clearly exercising special statutory power and the measure of the court's authority is the statute itself. Since the statute clearly provides the method for paying costs in confirmation suits, the court was without authority to disregard the statute and adjudge costs on the intervention against appellee. The rule of the law appears to be well settled that costs are a creature of the statute and can only be taxed by statutory authority: ''We have often held that the allowance of costs is purely statutory, since at common law neither party is entitled to recover his costs.'' *Arkansas State Game & Fish Commission* v. *Kizer, et al.,* 222 Ark. 673, 262 S. W. 2d 265, 38 A. L. R. 2d 1372.

''A judgment is void when the court proceeds without authority and in a manner forbidden by law with respect to the matter being adjudicated, although it may have jurisdiction of the parties and of the subject matter,'' *Soper* v. *Foster,* 244 Ky. 658, 51 S. W. 2d 929.

''Where the court, as here, is exercising special statutory powers, the measure of its authority is the statute itself; and a judgment or order in excess of the power thereby conferred is null and void. In such a case even though the court may have jurisdiction of the general subject matter and of the parties, an adjudication with reference thereto which is not within the powers granted to it is coram non judice,'' *Aetna Cas. & S. Co.* v. *Bd. of Suprvs.,* 160 Va. 11, 168 S. E. 617, 626.

It is true, as appellant asserts, that Grayson and Foster intervened in the confirmation suit but this intervention and cross-complaint was not an independent action but was ancillary to the State's confirmation suit. ''Intervention is not an independent proceeding, but an ancillary and supplemental one which, in the nature of things, unless otherwise provided for by legislation, must be in subordination to the main proceeding, and it may

be laid down as a general rule that an intervener is limited to the field of litigation open to the original parties. . . ." 39 Am. Jur., § 79, p. 950.

Here Grayson and Foster intervened and cross-complained [§ 84-1322 above] and claimed to own the minerals in the tract of land in Range 19, in which they made Arrington and wife cross-defendants. This intervention and cross-complaint was ancillary to the confirmation suit and was in no sense a new action. It is true that the present suit constitutes a collateral attack, however, since we hold that the decree for costs in the confirmation suit, and the Sheriff's deed made pursuant to the execution sale, were void, the court lacked authority and the power to make the decree and was subject to collateral attack. *Lambert* v. *Reeves*, 194 Ark. 1109, 110 S. W. 2d 503: "It is furthermore contended that this is a collateral attack upon the decree of confirmation. Even so, if the confirmation decree is void, in so far as it attempts to confirm a tax sale that is void for the defect above mentioned, then it is open to collateral attack, as a void judgment may be attacked collaterally."

The decree is affirmed.

Justice McFADDIN not participating.

Justices MILLWEE and SMITH dissent.

GEORGE ROSE SMITH, J., dissenting. This is an instance of a hard case making bad law. Grayson acquired title to Arrington's property under a writ of execution issued upon a relatively small judgment for costs. It is natural enough to sympathize with Arrington, even though he was at fault in not keeping himself informed about the progress of litigation to which he was a party. But that sympathy ought not to be carried to the extent of holding that the solemn judgment of a court of superior jurisdiction is a mere nullity, to be disregarded on collateral attack.

It is true, of course, that the legislature could have provided that the chancery court should be wholly without power to render a judgment for costs in a tax con-

firmation suit. But in my opinion that result should depend upon far more emphatic language than that used in the statute upon which today's decision rests.

The reason for the enactment of this statute is easily understood. When a state agency is directed to institute a suit some provision is ordinarily made for the payment of the court costs that must necessarily be incurred. In some instances the statute directs that the State shall not be required to pay costs as a condition to bringing suit; in other instances the legislature designates a fund from which the costs may be paid. The latter procedure has been followed in statutes directing the institution of proceedings to confirm the State's title to tax-forfeited land. It was provided by Act 119 of 1935, § 10, that the court costs should be paid from amounts received for the redemption or sale of such forfeited property. The present statute, enacted in 1943, authorizes the payment of court costs from amounts received by the State for the confirmation of title to lands certified for nonpayment of taxes. Ark. Stats. 1947, § 84-1327. As far as I can see, the purpose of the statute is to point out the fund from which the costs may be paid. There is nothing to indicate that the legislature meant to divest the chancery court of its routine authority to tax the costs according to the merits of the case. It may be true that, in view of the statute, the court committed an error that might have been corrected upon appeal. But I am altogether unwilling to say that the statute was intended to have the drastic effect of rendering the court's decree a mere nullity.