RANSOM *v.* WEISHARR.

5-2973 370 S. W. 2d 598

Opinion delivered September 23, 1963

*Kaneaster Hodges,* for appellant.

*Wayne Boyce* and *Fred M. Pickens, Jr.,* for appellee.

CARLETON HARRIS, Chief Justice. On September 26, 1961, appellant, Clarence Ransom, was struck and injured by an automobile operated by Fred F. Weisharr, appellee herein, who, with his wife, was enroute from Hot Springs, Arkansas, to his home in St. Louis, Missouri. Ransom was an employee of a highway contractor who was repairing a portion of Highway 67, between Tuckerman and Swifton. The incident occurred while appellant was in the act of crossing the highway, after delivering a check to a fellow employee. Ransom was injured, and instituted suit for damages; after the filing of an answer, the case proceeded to trial. The jury re-

turned a verdict in favor of Weisharr, and from the judgment entered thereon, appellant brings this appeal. For reversal, appellant lists six alleged errors, which we herewith proceed to discuss.

The first alleged error relates to the court's action in admitting, over objection, the testimony of Captain Melvin DeLong of the Arkansas State Police. The officer was permitted, as an expert, to give his opinion of the speed of the Weisharr vehicle at the time of the mishap, such opinion being based on an experiment that DeLong had conducted on the morning of the trial prior to its commencement. It was the opinion of DeLong that Weisharr was traveling at a speed of 27½ miles an hour at the time of the occurrence. The speed of the Weisharr vehicle was, of course, pertinent to the question of negligence, and had been mentioned by several witnesses for appellant. Kenneth Brown testified that Weisharr was traveling at "high speed"; Jimmy Rorex testified that the speed was between 40 and 50 miles per hour. Hugh Burris stated that the Weisharr automobile was traveling 55 or 60 miles per hour when it passed him, approximately "a half quarter" from where the injury occurred. Posted signs fixed the speed in the area where the highway was being re-surfaced at 35 miles per hour.

The captain first described the method used, and the factors involved, to determine, from the skid marks, the speed of an automobile.

"There are a number of factors involved in determining speed from skid marks. The 3 major ones that are involved in all calculations: the original speed of a vehicle, the surface over which it traveled and whether that surface is on an incline or a decline. A factor that is known as a drag factor or co-efficient friction, means the amount of drag that the surface puts on a tire that is sliding over it. It has to be calculated on each individual surface and it has to be calculated either on an incline or decline or whether it is wet or dry.

\* \* \*

"Q. Briefly, what are the factors which you take into consideration in making such a test in order to be able to state your opinion as to the speed of a vehicle?

A. There are a number of factors on the car itself. The brakes, for instance, the tires whether they are smooth tread or a good tread, how large the volume of the car or the frontage volume as it presents to any wind resistance, the inflation of the tires, whether they are low inflated or high inflated; that is some of the major ones.''

From the record, on *voir dire*:

''Q. Captain DeLong, are you familiar with the degree of inflation of the tires on the Mercury that was involved in this accident?

A. No, Sir.

Q. You are not?

A. No, Sir.

Q. Do you know what kind of tires they were?

A. No, Sir.

Q. Do you know what the state of the tread was on those tires?

A. No, Sir.

Q. Have you ever examined the brakes on that automobile?

A. No, Sir.

Q. Do you know the condition of the brakes on the automobile at that time?

A. Yes, Sir.

Q. Not having examined those brakes?

A. Yes, Sir.

Q. How do you know?

A. The brakes on an automobile are designed to do one thing, to lock the wheels.

Q. You have not examined the brakes?

A. No, Sir.

Q. Have you ever seen the automobile?

A. No, Sir.

Q. You didn't perform the experiment with the Mercury automobile involved in this, did you?

A. No, Sir."

The officer then testified (on direct continued):

"The tests that were made this morning were made on a surface that was described as identical to the surface at the location of the accident at the time of the accident. These tests were made to determine the drag factor or the amount of drag that the surface would exert on an automobile tire sliding over it. The drag factor on that particular surface was .62; that means that it was 62 per cent perfect for stopping an automobile. Now, the car involved slid 40 feet and 7 inches to a stop. Now taking the two known factors, the drag factor and the distance the car slid to a stop and then the calculations that comes out the minimum speed that this car would have to be traveling to slide 41 feet and stop over this surface would be twenty-seven and a half miles an hour."

Captain DeLong subsequently testified that he had conducted one experiment at the place where the accident occurred, but this experiment was of no value because the surface of the road was no longer the same as at the time of the mishap, *i.e.,* it was formerly old concrete, but was now (the day of the trial) new asphalt. The experiment, upon which the captain based his opinion, was made about three-fourths of a mile south of Swifton, and on a surface that DeLong had been told was identical to the condition of the surface at the scene of the accident in September.[1]

We are of the view that the court erred in permitting the officer's testimony to go to the jury for the reason that there are too many unknown facts, which according to the testimony of DeLong himself, influence a result, and which should be considered by an expert in reaching his opinion.

---

[1] The evidence does not definitely reflect the identity of the party who gave this information to Captain DeLong.

For instance, it will be observed from the officer's testimony (heretofore quoted), that DeLong mentioned the brakes as a factor—but admittedly, he knew nothing about the brakes on the Mercury automobile operated by Weisharr. He mentioned the condition of the tires, *i.e.,* whether possessing a good tread or smooth—but he did not know the condition of the tires on appellee's car. The officer also included inflation of the tires (whether low inflated or high inflated) as being another major factor—but he knew nothing about the amount of air in the tires on the Mercury. Captain DeLong also testified that the load carried by the vehicle influences the distance it will take for the car to stop. When asked if he knew the load in the Mercury automobile, he replied, ''One passenger, Sir,'' and stated that his experiment was based on that assumption.[2] The officer stated that he had been told that the car contained one passenger, but *this information was in error. Actually, the car contained two passengers.*[3] In addition, he never did see the Weisharr automobile at all, nor did he observe the surface of the road on September 26, 1961, but first viewed it on the day of the trial, eight months later.

Of course, an opinion based on an experiment is admissible, provided that such experiment is conducted

---

[2] While it is not mentioned in the briefs, it would seem logical that even the weight of the passengers would have some bearing. For instance, there should be a difference if an automobile is carrying a man weighing 275 pounds rather than a boy weighing 60 pounds.

[3] It will also be noted in DeLong's testimony, heretofore quoted, that the officer, in giving his opinion of the speed of the Weisharr car as 27½ miles per hour, used the term "minimum speed," which is somewhat confusing; subsequently, DeLong stated that, even considering all of the variable elements as against the driver, his speed estimate would not increase by more than two to five miles per hour. He was then asked, "What happens to those different variables that are unknown when calculating speed?" He replied, "About as many of them are pro for the driver as they are against it, they cancel each other out; but in the final calculation of the thing they all show up in the skid mark, the degree of air in the tires, the tread of tires all shows up in the skid mark; it determines how far the car will slide to a stop. You see a highly inflated tire will slide farther than a low inflated one, and the brake on an automobile is just designed to do one thing and that is lock that wheel." The witness, in stating, "as many of them are pro for the driver as against," was evidently referring to averages. This is, of course, somewhat speculative, and also seems inconsistent with his earlier testimony in which he described tire inflation, tread, etc., as "major" factors. While the captain stated that such elements as the degree of air in the tires and tread of the tires show up in the skid mark, the fact remains that he was unable to testify about either since he did not see the marks left by the Weisharr car.

under circumstances similar to those existing at the time of the occurrence which is the subject of the litigation. It is not necessary that conditions be identical to those existing at that time, but the experiments are admissible if there is a substantial similarity. *Dritt* v. *Morris,* 235 Ark. 40, 357 S. W. 2d 13. It is apparent from the preceding discussion that the factors, which DeLong himself mentioned as pertinent to a proper experiment, were undetermined at the time of the experiment, and the admission of the *evidence, therefore, constituted reversible error.*

This conclusion is in accord with our recent holding in *Henshaw* v. *Henderson,* 235 Ark. 130, 359 S. W. 2d 436. In that case, we reversed a judgment obtained by appellee by reason of the court's error in permitting a State Policeman to give his opinion as to the speed of appellant at the time of a collision. This opinion was based, in part, upon an experiment that the State Policeman, Glen Minton, had conducted. From the opinion:

"Mr. Minton was permitted to testify, over the objection of the appellant, that he was called to the scene of the accident shortly after it occurred. He described in detail the position of the Plymouth automobile and the Chevrolet convertible; the point where the two girls were found; and the position of the appellant who was unconscious on the front seat of his car and was further permitted to testify that on the morning of the trial he had taken his car, a 1960 Chevrolet, from a dead stop and accelerated as fast as possible for two-tenths of a mile (this being the distance between the motel and the location of the Plymouth that was struck) and that he attained a speed of 75 miles per hour; that it was one of the requirements of his position to estimate the speed of vehicles involved in a collision and that viewing the distance the Chevrolet convertible was out of control and the severity of the impact, he thought the Chevrolet convertible was traveling 80 miles per hour.

"The witness' test was made with a car other than the one involved in the accident and there is no showing that his test was made under the same conditions that prevailed at the time and at the place of the accident. The testimony of a policeman as an expert carries great weight but when

it is predicated on conditions different than those under scrutiny it is inadmissible.

"The objection of the appellant was timely and should have been sustained. For error in overruling the objection this cause is reversed and remanded for further proceedings not inconsistent herewith."

Actually, the circumstances in that case were much more favorable to the admission of the evidence since Minton did view the scene, together with the wrecked automobile; still, because his opinion was based in part upon the improper experiment, the testimony was held inadmissible. Here, DeLong knew nothing personally about the accident, the appearance of the skid marks, or any of the circumstances existing at that time.

We will make brief mention of some other alleged errors, since the same questions might again arise at a re-trial of the cause. Appellant requested an instruction relative to the respective rights of pedestrians and motorists upon public highways. It is true that both have a right to the use of the highway, but the instruction offered by appellant was erroneous, in that it told the jury that "the rights and *duties*[4] of drivers of automobiles and pedestrians on the public highways are equal and reciprocal." This instruction is not correct since their duties are not entirely the same.

Appellant requested an instruction in the wording of the statute [Ark. Stat. Ann. § 75-661 and § 75-725 (Repl. 1957)] which relates to the duty of the operator of a motor vehicle to give a reasonable warning of his approach, and to equip his car with a horn which can be heard, under normal conditions, for a distance of not less than 200 feet. While it is not error to instruct in the language of the statute, same is not absolutely necessary. The first part of the instruction was covered in the court's other instructions, and there was no evidence at all relative to the type of horn on the vehicle.

Appellant asserts two errors in connection with the court's instruction, 8(b); however, the record does not

---

[4] Emphasis supplied.

reflect that any objection was made to the instruction, and we are accordingly unable to consider these alleged errors.

Finally, appellant asserts that the court erred in refusing to admit certain photographs that appellant offered in evidence. These photographs were taken about two weeks after the accident, and do not depict the scene as it existed at the time of the mishap. We have held in several instances that the admission of photographs is a matter which rests largely within the discretion of the trial court, and we will not reverse the holding of that court unless it appears that there has been an abuse of discretion. *Powers* v. *Long,* 221 Ark. 400, 253 S. W. 2d 359, and cases cited therein. We are unable to say, in this instance, that there was such an abuse.

Because of the court's error in admitting the testimony of Captain Melvin DeLong, the judgment is reversed and the cause remanded.

It is so ordered.