THE AMERICAN PHYSICIANS INSURANCE CO.
*v.* Robert HRUSKA and Theodore MENAS

5-4583                              428 S. W. 2d 622

Opinion delivered June 3, 1968

*Thomas B. Tinnon* and *Donald Joe Adams,* for appellant.

*Roy E. Danuser, Bruce G. Heavner* and *Clifford Jarrett,* Kansas City, Mo., for appellees.

JOHN A. FOGLEMAN, Justice. Appellant seeks reversal of a judgment in favor of appellees for an alleged excessive amount exacted of appellees by it in connection with a transaction which appellees had contended was a usurious loan. Appellees contend that they borrowed $65,000 from appellant to enable them to purchase certain stock of Management Investment Corporation, a Missouri corporation of which they were the president and secretary respectively, and that this corporation in turn, owned all of the stock of Liberty Reserve Life Insurance Company. Appellees contend that the loan was made on December 2, 1959, and by the terms of the loan agreement, they were required to repay $82,400 six months later which sum, they say, they borrowed from one Harold R. Smith in order to obtain release of the collateral. On the other hand, appellant contends that it purchased from appellee Hruska a negotiable note of Management Investment Corporation for $80,000 at a discount. Appellant further contends that Harold R. Smith purchased the note from it on June 2, 1960, along with collateral therefor, consisting of all of the stock of Management Investment Corporation and of Liberty Reserve Life Insurance Company, for a consideration of $82,000.

Suit was filed by appellee Hruska against appellant for the recovery of $17,400, alleged to be the interest he was required to pay in excess of the rate permitted by law. Eventually the case was tried, and upon a jury verdict on September 18, 1967, the court rendered its judgment in favor of appellees[1] for the sum of $14,-800 with interest thereon from June 9, 1960.

In the interim between the filing of the complaint and trial, appellant filed a request for admissions, which

---

[1]Menas became a party after the filing of the original complaint.

was answered by appellees. They admitted that the note involved was for $80,000 and was executed by Management Investment Corporation and appellee Hruska; that it was not payable to appellant; and that it was the obligation of the corporation, along with appellees.

Subsequent to the filing of the response to the request for admissions, appellant filed a motion for summary judgment. This motion was based upon the pleadings and the answers to its request for admissions. Appellant contended that it was clear that it had purchased a note of Management Investment Corporation from Hruska at a discount and that the transaction did not constitute a loan and was not usurious. On the same date this motion was filed, appellees were granted leave to amend their complaint and filed a copy of the note. This copy revealed that the note bore a dateline at Baton Rouge, Louisiana, and was payable to "itself." The name of the corporation was signed by Robert J. Hruska, president. On the reverse side, endorsements of the corporation by Hruska as president and by Hruska individually appeared under a printed guaranty in favor of Fidelity National Bank of Baton Rouge, upon whose form the note was prepared and whose name as payee was stricken out. In the amended complaint, on which the case was ultimately tried, appellees alleged: that Management Investment Corporation owned all the stock of Liberty Reserve Life Insurance Company; that appellees owned a large portion of the capital stock of Management Investment and desired to purchase the balance of the outstanding stock; that on November 24, 1959, appellant obtained a Louisiana bank cashier's check for $65,000 payable to the order of appellees and one Earl Shelton; that on December 1959, in Kansas City, Missouri, appellant agreed to loan this amount to appellees on condition that they pledge all of the stock of Management Investment Corporation as security and that a note for $80,000 bearing 6 pct. interest and endorsed by this corporation and Hruska individually be executed; that appellees paid appellant $82,400 on this

note on June 1, 1960; that this amount was $14,800 in excess of the legal rate of interest. Thereafter, the cause was transferred to the Chancery Court of Baxter County, where the motion for summary judgment was denied and appellant required to plead to the amended complaint. The cause was then retransferred to Baxter Circuit Court where the motion for summary judgment was renewed and denied.

In response to interrogatories by appellees, appellant stated that on December 2, 1959, it purchased this note, which it claimed was alleged to be the property of Hruska, and paid $65,000 for it in Baton Rouge, Louisiana, with a check payable to appellees and Earl Shelton.

When the case was called for trial, appellant again renewed its motion for a summary judgment which was again denied. After the verdict, appellant moved for judgment notwithstanding the verdict, on the grounds that it was not supported by sufficient evidence.

Appellant lists four points for reversal which we will treat in the order asserted.

## I.

### THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR SUMMARY JUDGMENT.

Appellant cites no authority in support of its position that it was entitled to judgment as a matter of law. We do not consider this point meritorious, however, because a trial on the merits was had after the repeated denials of the motion. It has been held that the denial of a summary judgment is not reviewable where the denial is followed by a trial on the merits. See *Bell* v. *Harmon*, 284 S. W. 2d 812 (Ky. 1955). We deem this to be an appropriate rule. We have pointed out that, in some respects at least, treatment of motions

for summary judgment should be similar to that accorded motions for directed verdicts. *Russell* v. *Rogers,* 236 Ark. 713, 368 S. W. 2d 89. See, also, 6 Moore's Federal Practice § 56.04[2] p. 2006. A motion for directed verdict at the conclusion of a plaintiff's proof will not be considered on appeal where the defendant has thereafter offered evidence. *Lytal* v. *Crank,* 240 Ark. 433, 399 S. W. 2d 670. The obvious reason for this rule is that deficiencies in the evidence at that stage of the proceedings may well be supplied by evidence. *Grooms* v. *Neff Harness Co.,* 79 Ark. 401, 407, 96 S. W. 135, 137; *Fort Smith Cotton Oil Co.* v. *Swift & Company,* 197 Ark. 594, 124 S. W. 2d 1. For the same reason, a final judgment should be tested upon the record as it exists at the time it is rendered rather than at the time the motion for summary judgment is denied.

## II.

### THE TRIAL COURT ERRED IN ADMISSION OF TESTIMONY WHICH WAS IRRELEVANT AND IMMATERIAL AND TENDED TO PREJUDICE THE JURY AGAINST THE APPELLANT.

Appellant contends that testimony of appellees, concerning an automobile driven by an officer of appellant and attendance of appellees at a football game as guests of officers of appellant, was irrelevant and immaterial and prejudicial in that the jury was led thereby to believe that appellant was a large, affluent company that "broke appellees' company."

Upon being asked if they were met in New Orleans by one Robert Love, prior to the transaction between the parties, Hruska replied that they were "with Mr. Moore's Continental Lincoln." He described the car as being equipped with a television. No objection was made to this testimony. Later appellant's own attorney examined Menas about the type of automobile and the outcome of the football game. After Hruska had told of being taken to a country club where they met com-

pany officials for lunch and later of being taken by them to a football game, an objection that this testimony was immaterial and irrelevant was overruled. Hruska then testified that discussions about the transaction were carried on intermittently during lunch and at the football game and thereafter at dinner at the country club. Inasmuch as the principal issue in the case was whether appellant made a loan to appellees secured by Mortgage Investment Corporation's note and the pledge of stock, or whether appellant simply bought a note of Mortgage Investment at a discount, any and all negotiations leading up to the transaction were proper subjects of inquiry. Appellant suggests that since there was a written instrument, *i. e.,* the note, this testimony was neither relevant nor material. We have long held that parol evidence is admissible for the purpose of showing the usurious nature of a transaction even though it might have a tendency to vary a written document. *Tillar* v. *Cleveland,* 47 Ark. 287, 1 S. W. 516; *Heidelberg Southern Sales Co.* v. *Tudor,* 229 Ark. 500, 316 S. W. 2d 716. This court has long taken the position that any evidence tending to show that the substance of a transaction was a scheme to evade usury laws, regardless of the form thereof, should be admitted. *Home Building & Savings Association* v. *Shotwell,* 183 Ark. 750, 38 S. W. 2d 552. In 1886, in the case of *Tillar* v. *Cleveland, supra,* this court said:

"* * * It would be strange if, upon the trial of such an issue, a court could not hear proof of all matters which throw light upon the situation and conduct of the parties, and the motives which influenced them."

There has been no deviation from that idea since that time. We find no error here.

### III.

### THE VERDICT OF THE JURY IS CONTRARY TO A PREPONDERANCE OF THE EVIDENCE.

Appellant argues that there is no substantial evidence to support the theory that the transaction between the parties was actually a loan of $65,000 by appellant to appellees instead of a sale of a note by Hruska to appellant. Hruska testified substantially as follows: Menas brought Earl Shelton to discuss their need for money. Shelton claimed to be an actuary and consultant for American Physician's Insurance Company and said he was in Missouri looking for a company for reinsurance and for the purpose of getting appellant into Missouri. Shelton expressed the thought that his company would make a loan to appellees. Pursuant to a tentative agreement with Shelton, appellees flew to New Orleans where they were met by a man named Love, who claimed to be assistant secretary of appellant. Love drove them to the home offices of appellant at Baton Rouge where they were met by E. P. Moore, executive vice president, one Avery, secretary, and Shelton. The loan was discussed along with the possibility that Liberty Reserve Insurance Company could reinsure risks if Hruska controlled both it and Mortgage Investment. This would permit appellant to write business in Missouri on a co-insurance or reinsurance agreement. They discussed the fact that the money was to be used by appellees to purchase the stock of two other stockholders in order that they might control both companies. Appellees asked for a loan for a year but appellant would only allow six months. These officers agreed to loan $65,000 for six months at 6% interest. Appellees were returned to New Orleans in a company car and flew back to Kansas City on November 22, 1965. December 2 was the last day on which appellees could exercise their option to buy the stock. Shelton appeared in Kansas City on December 1st with a cashier's check for $65,000 payable to appellees and Shelton. Shelton then demanded a "lug" of $15,000 and other concessions about the operation of the company and delivered an ultimatum that the demands would be met or there would be no money. Hruska refused on that day but felt compelled to accept the terms the next day. Shelton then drew up the papers

which appellees signed and took the note and other papers and the stock of both the investment company and insurance company to Baton Rouge after delivering the check. When the note was due, appellees borrowed $83,-000 from one H. R. Smith, $82,400 of which was used to repay appellant. Management Investment Company had no reason to give him a note, but the corporation authorized the execution of the note.

The testimony of Menas was largely corroborative of that of Hruska. He said that when appellees did not accept the terms communicated by Shelton, they tried unsuccessfully overnight to get the money from other sources. He also said that there was no meeting of the board of directors of Mortgage Investment Corporation on either December 1st or 2nd.

This was sufficient evidence to support a finding that the real transaction was a loan by appellant to appellees at a usurious rate of interest. This court said in *Sparks* v. *Robinson,* 66 Ark. 460, 51 S. W. 460:

"* * * The law shells the covering and extracts the kernel. Names amount to nothing, when they fail to designate the facts. We are of the opinion that the court was justified in concluding that the papers called bill of sale and sales tickets were nothing more or less than a shift for a usurious loan of money."

A note payable to the order of the maker and endorsed by him is void for usury when the difference in the consideration for the first negotiation and the face amount is more than the legal interest for the period between the date of negotiation and the date of maturity, if the parties to the loan intended to pay and receive a greater rate of interest than the legal rate. *German Bank* v. *DeShon,* 41 Ark. 331. Whether a particular transaction constitutes a loan or a bona fide purchase and discount is a jury question where the evidence

is conflicting. *Sallee* v. *Security Bank & Trust Co.*, 119 Ark. 484, 177 S. W. 1133. The Missouri law on this point seems virtually identical to that of Arkansas. It has been held there that a bona fide sale of notes, however great the discount, is not usurious, but where there is no sale in good faith but a mere loan, the fact that the note is made to one who, acting as a conduit, endorses it over to a third person who advances the money, knowing of the facts surrounding the execution, the procedure will not be sufficient to evade the usury laws. *Anderson* v. *Curls*, 309 S. W. 2d 692 (Mo. App. 1958). See, also, *Quinn* v. *Van Raalte*, 276 Mo. 71, 205 S. W. 59 (1918).

Appellant contends that since the note bears a Baton Rouge dateline, the Louisiana law should be applied. While there was conflict in the testimony and a finding that the note was executed in Louisiana might well have had adequate evidentiary support, Louisiana law cannot be applied in this case in any event for reasons hereinafter stated.

Appellant also suggests that the testimony of Hruska is not substantial because of contradictory conclusions that may be found from his testimony and exhibits thereto. It is sufficient to say that his credibility and the weight to be given his testimony were proper matters for jury determination and have been resolved.

## IV.

### THE COURT ERRED IN ITS INSTRUCTIONS TO THE JURY AS TO WHICH LAW APPLIED.

Appellant's attorney stated at the conclusion of all the evidence that appellant still contended that the law of Louisiana applied. Appellees then asked to be permitted to produce evidence as to the Missouri law and appellant's counsel responded that the transaction actually took place in Louisiana. The court gave instructions based on Missouri law. No objection was made by appellant to any instruction. There is no reversible er-

ror on the part of the court in this action, for two reasons. In the first place, an instruction cannot be questioned on appeal in the absence of an objection. *Ransom v. Weisharr,* 236 Ark. 898, 370 S. W. 2d 598. Secondly, we cannot consider this contention because the Uniform Interstate & International Procedure Act requires that a party who intends to raise an issue concerning the law of any jurisdiction or governmental unit thereof outside this state must give notice in his pleading or other reasonable written notice. Ark. Stat. Ann. § 27-2504 (Supp. 1967). No such notice was given by appellant, even though all of its pleadings except an objection to process were filed after the effective date of the act. On the other hand, appellees pleaded Missouri law in their amended complaint. Although appellant denied the allegation with reference to the Missouri statute, there is no written notice of its reliance on Louisiana law. This requirement is a very useful and wise one. It is only fair that both the adversary and the trial court be advised of a party's contention as to the applicable law where any question may arise. This should be done in a manner so that the contention is clear before the trial is undertaken and so that the appellate court can ascertain from the record that it was done.

## CROSS-APPEAL

The trial court denied appellees' motion for a reasonable attorney's fee, from which appellees have taken a cross-appeal. The applicable Missouri statute provides that any person violating the act shall be subject to be sued for all sums of money paid in excess of the principal and legal rate of interest on any usurious loan "and shall be adjudged to pay the costs of the suit, including a reasonable attorney's fee to be determined by the court." It seems clear that under the language of this statute, attorney's fees are to be allowed as costs. See, also, *Bruegge v. State Bank of Wellston,* 74 S. W. 2d 835 (Mo. 1934). While appellees contend that in Missouri this is a matter of substantive, not procedural law,

this is a matter for determination under Arkansas law and by Arkansas courts. *St. Louis-San Francisco Ry. Co.* v. *Cox,* 171 Ark. 103, 283 S. W. 31. See Leflar, Conflict of Laws (Student's Edition, 1959) § 60, p. 110; 15A C. J. S. Conflict of Laws § 22(1), p. 527. The items of, and rights to, costs are procedural and governed by the law of the forum. *Bank* v. *Davidson,* 18 Ore. 57, 22 Pac. 517 (1889); *Security Co. of Hartford* v. *Eyer,* 36 Neb. 507, 54 N. W. 838 (1893); *Conte* v. *Flota Mercante Del Estado,* 277 F. 2d 664 (2d Cir. 1960).

The right to costs is entirely dependent on statute in a case at law. *Arkansas State Game & Fish Comm.* v. *Kizer,* 222 Ark. 673, 262 S. W. 2d 265, 38 ALR 2d 1372; *Grayson* v. *Arrington,* 225 Ark. 922, 286 S. W. 2d 501; *Arkansas State Highway Comm.* v. *Union Planters Nat'l Bank,* 231 Ark. 907, 333 S. W. 2d 904. Attorney's fees cannot be allowed as costs in suits except as provided by statutes. *American Exchange Trust Co.* v. *Truman Special School Dist.,* 183 Ark. 1041, 40 S. W. 2d 770. We have held that entitlement to attorney's fees on a suit brought in Arkansas on an insurance policy is a procedural matter and governed by Arkansas law. *New Empire Life Ins. Co.* v. *Bowling,* 241 Ark. 1051, 411 S. W. 2d 863. We find no Arkansas statute under which attorney's fees might be allowed in a case such as this.

If the statute providing for attorney's fees is not to be considered as an allowance of costs, then it is a penal statute without extraterritorial effect and unenforceable in Arkansas. *Arden Lumber Co.* v. *Henderson Iron Works & Supply Co.,* 83 Ark. 240, 103 S. W. 185; *White-Wilson-Drew Co.* v. *Egelhoff,* 96 Ark. 105, 131 S. W. 208.

The judgment is affirmed on appeal and cross-appeal.