**WOODS MASONRY, INC., Plaintiff,**

v.

**MONUMENTAL GENERAL CASUALTY INSURANCE CO., Defendant.**

**No. C01–4045–MWB.**

United States District Court,
N.D. Iowa,
Western Division.

April 23, 2002.

Daniel L. Hartnett, Crary, Huff, Inkster, Hecht, Sheehan, Ringenberg, Hartnett, Storm, Sioux City, IA, for plaintiff.

Steven L. Nelson, Davis, Brown, Koehn, Shors & Roberts, Des Moines, IA, Paul W. Deck, Jr., Deck & Deck, Sioux City, IA, for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING THE PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ..................................................... 1021
 A. Procedural Background ................................................ 1021
 B. Disputed And Undisputed Facts ....................................... 1023

II. DISCUSSION ....................................................... 1024
 A. Standards For Summary Judgment ..................................... 1024
 1. Requirements of Rule 56 ......................................... 1024
 2. The parties' burdens ............................................ 1025
 B. Choice–Of–Law ...................................................... 1025
 C. Construing The Policy ............................................... 1026
 1. Is parol evidence admissible to aid in the court's interpretation of
 the policy? ..................................................... 1026
 2. Does the policy exclude employees hired outside of Arkansas? ........ 1032
 D. Estoppel Defense .................................................... 1033
 1. Availability of estoppel as a defense in this action ................... 1033
 2. Elements of estoppel ............................................ 1034
 3. Use of estoppel to deny coverage on this claim ....................... 1036
 E. Attorneys' Fees And Penalties ........................................ 1036
 1. In general, attorneys'fees are substantive for Erie purposes ........... 1039
 2. Arkansas Supreme Court's treatment of section 23–79–208 ............. 1040
 a. Relevant caselaw ............................................ 1041
 b. Rules drawn from caselaw .................................... 1044
 c. Summary .................................................... 1045

*III. CONCLUSION* ............................................................1045

This declaratory judgment action stems from a job-related accident that occurred on March 17, 1999 in Spencer, Iowa. On that date, the plaintiff, Woods Masonry Inc. ("Woods Masonry") was performing work as a subcontractor in the construction of a commercial building. Shortly before the accident, Woods Masonry, an Arkansas corporation, hired James Eischeid ("Eischeid"), an Iowa resident. Mr. Eischeid was seriously injured when a gust of wind toppled one of the block walls under construction, collapsing on Mr. Eischeid. Woods Masonry's workers' compensation carrier, defendant Monumental General Casualty Insurance Co. ("Monumental"), refused coverage, claiming that Woods Masonry's policy covered only Arkansas employees hired in Arkansas.

While at first blush this case may appear to be a simple contract action, it implicates complex legal issues that are not readily ascertainable. In order to decide the issues raised by the parties in their respective motions for summary judgment, the court must determine whether parol evidence is admissible to aid in the interpretation of the parties' contract and, furthermore, whether an Arkansas statute providing for attorneys' fees and penalties is procedural or substantive, because a federal court sitting in diversity must make this critical determination when choosing which forum's law applies.

## I. INTRODUCTION

In this action, Woods Masonry seeks a declaratory judgment, pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201, that Monumental is responsible for providing workers' compensation coverage of the Eischeid claim, which arose out of

Mr. Eischeid's March 17, 1999 work-related accident in Spencer, Iowa. In addition, Woods Masonry seeks penalties and attorneys' fees pursuant to an Arkansas statutory provision that provides for damages and attorneys' fees to an insured when an insurer fails to timely pay a compensable claim.[1] Monumental denies that Woods Masonry's workers' compensation policy covers the Eischeid claim, because Monumental contends that the policy's coverage is limited to injuries sustained by Arkansas residents who were hired by the plaintiff in Arkansas. Monumental asserts that Woods Masonry knew of this limitation and assured Monumental that only Arkansas employees would be taken to the Iowa job site. Monumental contends that, based on these assurances, Monumental issued proof of workers' compensation coverage for the Spencer, Iowa construction job.

Furthermore, Monumental disputes that the Arkansas statute invoked by the plaintiff applies in this action because Monumental argues that the statute is procedural. Monumental argues that, under the *Erie* doctrine, federal courts sitting in diversity should apply the procedural law of the forum state, rather than the law of the state with the most significant contacts to the cause of action. Therefore, according to the defendant, the *Erie* doctrine precludes application of the Arkansas statute in question.

### A. Procedural Background

Subject matter jurisdiction in this matter is predicated on diversity of citizenship. The plaintiff is an Arkansas corporation, and its principal place of business is in Arkansas as well. The defendant is incor-

---

1. Woods Masonry also initially pursued, but later withdrew, a bad faith tort claim against Monumental.

porated in Maryland, and its principal place of business is likewise in Maryland. The amount in controversy in this case has been plead in good faith to exceed $75,000, exclusive of interest and costs. Diversity jurisdiction, therefore, is proper pursuant to 28 U.S.C. § 1332.

In a separate action pending before this court, *Eischeid v. Dover Construction, Inc., et al.*, C00-4100-MWB, (hereinafter referred to as the personal injury action), Mr. Eischeid seeks compensation for his injuries from, among other parties, Woods Masonry. Woods Masonry filed this lawsuit against Monumental on May 9, 2001 in response to Mr. Eischeid's amended complaint, which added Woods Masonry as a party to his personal injury action after he learned that Monumental had refused coverage of his claim. However, in the personal injury action, Woods Masonry contends that it is immunized from Mr. Eischeid's suit under the Iowa Workers' Compensation Act, Iowa Code § 85 *et seq.*, which provides that workers' compensation benefits "shall be the exclusive and only rights and remedies of … an [injured] employee … at common law or otherwise, on account of such injury … against … the employee's employer." Iowa Code § 85.20 (2001). In other words, the Iowa Workers' Compensation Act bars employees from suing their employers for injuries arising out of and in the course of employment. *See id.* Because coverage of Mr. Eischeid's injuries would prevent Mr. Eischeid from pursuing his negligence claim against Woods Masonry in the personal injury action, this court stayed the Eischeid personal injury lawsuit pending disposition of this action.

On January 11, 2002, Monumental filed a motion for partial summary judgment on

Woods Masonry's bad faith tort claim and on the applicability of the Arkansas statute providing for attorneys' fees and penalties.[2] Monumental did not move for summary judgment on Woods Masonry's coverage claim, asserting that there are factual issues that preclude summary judgment. On February 19, 2002, Woods Masonry filed a resistance to Monumental's motion for partial summary judgment. In its resistance, Woods Masonry asserts that it is entitled to penalties and attorneys' fees provided for by Arkansas law. In lieu of rehashing the arguments in support of Woods Masonry's own motion for partial summary judgment, which was filed February 8, 2002, Woods Masonry's resistance to Monumental's motion referenced the arguments made in support of Woods Masonry's motion for summary judgment with respect to Woods Masonry's contention that the Arkansas statute applies in this action. However, in its resistance papers, Woods Masonry concedes that it lacks the requisite elements necessary to sustain a bad faith tort claim under Arkansas law. Woods Masonry, therefore, withdrew that claim.

On February 8, 2002, Woods Masonry filed a motion for partial summary judgment, asserting that there are no genuine issues of material fact in dispute on the coverage claim because the workers' compensation policy speaks for itself and provides coverage of the Eischeid accident. In addition, Woods Masonry argues that any prior or contemporaneous agreements between the parties that the policy would cover only employees of Woods Masonry who were residents of Arkansas and were hired in Arkansas, even if true, are extrinsic evidence, extinguished by the policy's merger clause and barred by the parol

---

**2.** The motion for partial summary judgment filed January 11, 2002 was, in fact, a corrected motion. Monumental originally moved for summary judgment on January 9, 2002.

However, because the motion failed to comply with the local rules, the court rejected the motion and its accompanying papers.

evidence rule. Furthermore, Woods Masonry contends that the Arkansas statutory provision providing for attorneys' fees and penalties is substantive and, therefore, should apply, even though this court sits in Iowa.

A jury trial in this case is scheduled for June 10, 2002. Further, both parties requested oral arguments on their respective motions for partial summary judgment. The court granted the parties' requests and heard arguments, which took place telephonically, on April 17, 2002. The plaintiff, Woods Masonry, was represented at these arguments by Daniel L Hartnett of Crary–Huff–Inkster–Hecht–Sheehan–Ringenberg–Hartnett–Storm, Sioux City, Iowa. The defendant, Monumental, was represented by both Steven L. Nelson of Davis Brown Koehn Shors & Roberts, Des Moines, Iowa and Paul W. Deck, Jr. of Deck & Deck, Sioux City, Iowa.

### B. Disputed And Undisputed Facts

The court will discuss here only the nucleus of undisputed facts and such of the disputed facts as are necessary to provide a factual background for the legal analysis of the parties' motions for summary judgment rather than attempting to provide an exhaustive disquisition of the undisputed and disputed facts of this case. In its legal analysis, the court will address in greater detail, where necessary, the parties' assertions of genuine issues of material fact that may preclude summary judgment in this matter.

Woods Masonry is a relatively new corporation, owned by Angela and John Woods and incorporated in September of 1998. As is implied by its name, Woods Masonry is in the business of doing stonework and brickwork on construction jobs. In November of 1998, Ms. Woods contacted Pam Halverson of the Standridge Agency in Russellville, Arkansas to obtain workers' compensation insurance coverage. HCC Employer Services, Inc. ("HCC") is the managing underwriter for Monumental and, through Ms. Halverson, issued Woods Masonry a workers' compensation policy on December 2, 1998.

In early 1999, Woods Masonry was hired by the general contractor, Dover Construction, Inc.,[3] to do the masonry work for the construction of an office supply store, located in Spencer, Iowa. Prior to beginning work in Iowa, Woods Masonry contacted Ms. Halverson to obtain a certificate of workers' compensation insurance coverage. At this point, the parties dispute whether or not Ms. Halverson informed Woods Masonry that only employees hired in Arkansas would be covered by the workers' compensation policy. Monumental claims that Woods Masonry assured Ms. Halverson that it would not be hiring out-of-state employees and assured her that it would be taking all the necessary employees from Arkansas to Iowa for the Spencer, Iowa job. In any event, Ms. Halverson issued the certificate of workers' compensation coverage on February 8, 1999. At some point after beginning work in Iowa and before March 17, 1999, Woods Masonry hired James Eischeid, an Iowa resident.[4] Even though he was hired in Iowa, Woods Masonry treated Mr. Eischeid as an Arkansas employee for tax purposes.

---

**3.** Dover Construction, Inc. ("Dover") is also named as a defendant in the Eischeid personal injury action. In the Eischeid action, Dover, moreover, filed a third-party complaint against Woods Masonry for breach of contract arising out of the March 17, 1999 accident.

**4.** The parties have not indicated the date on which Woods Masonry hired Mr. Eischeid. However, there is some indication that Mr. Eischeid was hired not more than a day or two before the March 17, 1999 accident.

1024

The masonry job in Spencer, Iowa quickly took a tragic turn when, on March 17, 1999, Mr. Eischeid and Mr. Woods were seriously injured when a gust of wind blew down one of the block walls under construction. As a result of the collapse of the concrete wall, Mr. Eischeid sustained serious injuries, including fractures to his skull, jaw, nose, femur, teeth and sinus cavity. Woods Masonry promptly notified Monumental of the accident on March 17, 1999. On that same day, Monumental made the decision that Woods Masonry's policy did not cover any claim for Mr. Eischeid's injuries because Mr. Eischeid was an Iowa resident, hired in Iowa. Monumental formalized the denial of workers' compensation coverage in a March 22, 1999 letter, which explained Monumental's position—a position from which Monumental has not tergiversated: "There is no coverage because Mr. Eischeid was hired in Iowa, resides in Iowa, and was injured in Iowa. The workers compensation policy you [Woods Masonry] have with us [Monumental] provides coverage for Arkansas employees, hired and residing in Arkansas." (Dft's Exh. 6, at 36). Thus, the primary question the court is asked to decide on the parties' cross motions for summary judgment is whether Woods Masonry's workers' compensation policy covers all of Woods Masonry's employees or whether it is limited in scope to provide coverage only to those employees who are Arkansas residents.

## II. DISCUSSION

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347, 2000 WL 84400 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Cmty. Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). The essentials of these standards for present purposes are as follows.

#### 1. Requirements of Rule 56

Rule 56 itself provides, in pertinent part:

Rule 56. Summary Judgment

. . . . .

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

Fed.R.Civ.P. . 56(a)–(c) (emphasis added).

Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77

(8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir. 1999); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

### 2. The parties' burdens

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hospitals, Inc.,* 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County,* 7 F.3d 808, 810 (8th Cir.1993). "When a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Instead, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559,

562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995). If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348; *Quick,* 90 F.3d at 1377 (same).

### B. Choice–Of–Law

The first issue the court must address is what law governs this court's interpretation of the parties' contract. In this instance, there are several choices of law, including Iowa (because the accident for which the parties dispute coverage occurred in Spencer, Iowa); Arkansas (because Woods Masonry is an Arkansas corporation and because the contract was formed in Arkansas); and Maryland (because it is the state in which Monumental is incorporated).

A federal court must apply the choice of law rules of the forum state—in this case, Iowa. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Iowa law, in turn, employs the Second Restatement's "most significant relationship" test to determine which state's law will govern a contract's interpretation. *See, e.g., Veasley v. CRST Intern., Inc.,* 553 N.W.2d 896, 897 (Iowa 1996) (recognizing Iowa's adoption of the "most significant relationship" test); *Cameron v. Hardisty,* 407 N.W.2d

595, 597 (Iowa 1987) (same); *Cole v. State Auto. & Cas., Underwriters,* 296 N.W.2d 779, 781–82 (Iowa 1980) (same); *Berghammer v. Smith,* 185 N.W.2d 226, 231 (Iowa 1971) (same). In this case, the court agrees with the parties that Arkansas has the most significant relationship to Woods Masonry's claims because (1) the contract was formed in Arkansas, and (2) Woods Masonry is an Arkansas company. *See* Restatement (Second) of Conflict of Laws, § 188(2) (absent choice by parties, court should consider place of contracting, of negotiation, of performance, of contract's subject matter, and parties' domiciles, residences, nationalities, places of incorporation, and places of business).

### C. Construing The Policy

On its face, the insurance policy at issue in this case does not explicitly state that it covers only Arkansas employees. In fact, Ms. Halverson stated in her deposition that the parties' understanding that Woods Masonry would not be hiring out of state was never put in writing. She states that "it was an oral understanding." (Def.'s Supp.App., at 51). In order to overcome the absence of this alleged condition, Monumental contends that, although the wording of the policy is not ambiguous on its face, when considered in conjunction with the surrounding circumstances, a latent ambiguity arises, which, according to Monumental, permits the court to consider extrinsic evidence. Namely, Monumental urges the court to consider the conflicting testimony of Ms. Woods and Ms. Halverson with respect to (1) whether Ms. Halverson informed Ms. Woods that only employees hired in Arkansas would be covered by the policy and (2) whether Ms. Woods assured Ms. Halverson that Woods Masonry would not be

hiring any out-of-state employees for the Iowa job. In addition, Monumental argues that only by recognizing a restriction in the residence of an insured's employees can two contractual provisions, which will be discussed below, have independent meaning of each other.

■ Monumental believes that, when these factors are taken into consideration, a genuine issue of material fact arises, precluding summary judgment on Woods Masonry's claim that the Eischeid accident is covered by Woods Masonry's workers' compensation policy. Unlike Monumental, however, Woods Masonry presses the court not to stray from the four corners of the insurance policy. In support of its argument, Woods Masonry insists that the policy is unambiguous and does not restrict coverage based on an employee's state of residence. Woods Masonry also rejects Monumental's assertions that this court should consider the testimony of Ms. Halverson, invoking the parol evidence rule, which bars admission of prior or contemporaneous statements that contradict fully or partially integrated agreements. Restatement (Second) of Contracts § 213 (1979).

### 1. Is parol evidence admissible to aid in the court's interpretation of the policy?

■ The crux of the coverage issue in this case and whether it can be decided on summary judgment depends on whether this court finds that the contract is ambiguous. That is so because the court's consideration of extrinsic evidence depends, in the first instance, upon whether the court finds that the workers' compensation policy at issue is ambiguous on its face.[5] *See Elam v. First Unum Life Ins.*

---

5. The parol evidence rule "is not a rule of evidence but a rule of substantive law. Nor is it a rule of interpretation; it defines the subject matter of interpretation. It renders inop- erative prior written agreements as well as prior oral agreements." Restatement (Second) of Contracts § 213 cmt. a. A prerequisite to

*Co.*, 346 Ark. 291, 57 S.W.3d 165, 169 (2001) (stating that "[i]f the language of the policy is unambiguous, we [Arkansas courts] will give effect to the plain language of the policy without resorting to the rules of construction") (citing *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000); *Western World Ins. Co. v. Branch*, 332 Ark. 427, 965 S.W.2d 760 (1998)). If the policy is ambiguous, the court may consider evidence outside of the four corners of the agreement. *See id.* However, if the court finds ambiguity and considers disputed extrinsic evidence, under Arkansas law, "where ... parol evidence has been admitted to explain the meaning of the language, the determination becomes one of fact for the jury to determine." *Elam*, 57 S.W.3d at 169 (citing *Smith v. Prudential Prop & Cas. Ins. Co.*, 340 Ark. 335, 10 S.W.3d 846 (2000); *Southall v. Farm Bureau Mut. Ins. Co.*, 276 Ark. 58, 632 S.W.2d 420 (1982)); *accord Keller v. Safeco Ins. Co.*, 317 Ark. 308, 877 S.W.2d 90 (1994) ("The initial determination of the existence of an ambiguity in a contract rests with the trial court, and if an ambiguity exists, the meaning becomes a question of fact for the fact finder.") (citing *Minerva Enter. Inc. v. Bituminous Cas. Corp.*, 312 Ark. 128, 851 S.W.2d 403 (1993)); *Lee v. Hot Springs Village Golf Sch.*, 58 Ark.App. 293, 951 S.W.2d 315 (1997) (holding summary judgment was improper because "if there is ambiguity in the contract, a question of fact remains as to the parties' intent.")

(citing *Albright v. Southern Farm Bureau Life Ins. Co.*, 327 Ark. 715, 940 S.W.2d 488 (1997)). Thus, if the court (1) finds that the agreement is ambiguous, and (2) considers disputed extrinsic evidence to interpret the meaning of a disputed provision, summary judgment would be inappropriate in this case. *See id.; accord Deal v. Farm Bureau Mut. Ins. Co. of Arkansas, Inc.*, 48 Ark.App. 48, 889 S.W.2d 774, 776 (1994) ("[I]f ambiguity exists then parol evidence is admissible and the meaning of the ambiguous term becomes a question for the fact-finder.") (citing *C. & A. Constr. Co. v. Benning Construction Co.*, 256 Ark. 621, 509 S.W.2d 302 (1974)).

 If, however, the policy is unambiguous, then the court may determine as a matter of law whether the policy in question affords coverage of the Eischeid claim. *See Duvall v. Massachusetts Indem. & Life Ins. Co.*, 295 Ark. 412, 748 S.W.2d 650 (1988). "Although the meaning of an ambiguity may become a question for the fact-finder if parol evidence has been admitted to resolve that ambiguity, *see Minerva Enter., Inc. v. Bituminous Cas. Corp.*, 312 Ark. 128, 851 S.W.2d 403 (1993), where the meaning of the language of a written contract does not depend on disputed extrinsic evidence, the construction and legal effect of the contract are questions of law. *See Duvall v. Massachusetts Indem. & Life Ins. Co.*, 295 Ark. 412, 748 S.W.2d 650 (1988); *Security Ins. Co. v. Owen*, 252 Ark. 720, 480 S.W.2d 558

---

its application, however, is that the agreement at issue be fully integrated. *See id.* at § 213. In other words, the parol evidence rule does not necessarily bar the consideration of extrinsic evidence unless the contract contains within its four corners the final and complete expression of the parties' entire agreement. *See id.* at § 209.

The parties in this case have not raised this issue, but, for the sake of completeness, the workers' compensation policy in question here is, by its express terms, a complete one,

and thus is subject to the parol evidence rule. *See id.; accord* 11 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 33:21, at 661–62 (4th ed. 1999) ("By stipulating the fact of integration, [merger and integration] clauses purport to contractually require application of the parol evidence rule to the parties' agreement.") Namely, the policy provides that "[t]he only agreements relating to this insurance are stated in this policy." (Def.'s App., at 41).

(1972)." *Smith v. Prudential Property & Cas. Ins. Co.*, 340 Ark. 335, 10 S.W.3d 846, 850 (2000).

"The initial determination of the existence of an ambiguity rests with the court...." *Deal*, 889 S.W.2d at 776 (citing *C. & A. Constr. Co.*, 509 S.W.2d at 302). Nevertheless, in this case Monumental asserts that ambiguity exists with respect to the meaning of the "Other States Insurance" provision of the policy. This provision, Item 3.C., provides, in pertinent part: "Part Three of the policy applies to the states, if any, listed here: ALL STATES EXCEPT STATES LISTED IN ITEM 3.A [Arkansas] AND NEVADA, NORTH DAKOTA, OHIO, WASHINGTON, WEST VIRGINIA, AND WYOMING." [6] (Def.'s App., at 38). Part Three, in turn, provides the following:

PART THREE—OTHER STATES INSURANCE

A. How This Insurance Applies

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page [quoted above].

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in item 3.A. of the Information Page [here, Arkansas].

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page [*i.e.*, in any state other than Arkansas],

coverage will not be afforded for that state unless we are notified within thirty days.

B. Notice

Tell us at once if you begin work in any state listed in item 3.C. of the Information Page.

(Def.'s App., at 44).

Monumental contends that this provision "was intended to cover Woods Masonry's Arkansas employees for temporary or incidental work performed outside of the state of Arkansas. For example, if one of Woods Masonry's Arkansas employees was injured in Iowa while on a temporary job in that state, Monumental would be obligated under the 'other states insurance' to provide coverage for that claim.... [T]he 'other states insurance' provision was not intended to obliterate the policy provisions relating to 'locations' and turn an Arkansas policy into a nationwide workers compensation policy." (Def.'s Br. Resisting Pltf.'s Motion, at 9). Monumental essentially contends, therefore, that a latent ambiguity exists with respect to the meaning of Items 3.A. and 3.C. because Woods Masonry's interpretation would render Item 3.C. meaningless, which is contrary to the rules of construction applied by Arkansas courts. Woods Masonry, on the other hand, argues that the policy affords coverage to all states included in the "other states insurance provision" so long as the insured follows the notification procedure outlined in the policy, which Woods Masonry did.

▆▆ Monumental is correct in its assertion that a court should construe a contract so that "[e]very word in the agreement [is] taken to have been used for a purpose, and no word [is] rejected as mere

---

6. The parties agree that Arkansas should have been listed in Item 3.A. of the Information Page accompanying the workers' compensation policy but that it was inadvertently omit-

ted. The court will, therefore, refer to Arkansas as an Item 3.A. state just as if it had been properly included there.

surplusage." *First Nat'l Bank v. Griffin,* 310 Ark. 164, 832 S.W.2d 816 (1992). While "[a] construction which entirely neutralizes one provision should not be adopted if the contract is susceptible of another which gives effect to all of its provisions," *see id.,* Woods Masonry offers a reasonable and persuasive purpose behind the "other states insurance" provision that gives effect to both Items 3.A. and 3.C. and yet does not result in any ambiguity. Specifically, Woods Masonry points out that Item 3.C. likely is included for underwriting and rate-setting purposes. The language of the contract clearly indicates that not all policies issued by Monumental have coverage under the "other states insurance" provision—the provision provides that "Part Three of the policy applies to the states, *if any,* listed here." and that "[t]his other states insurance *applies only if* one or more states are shown in Item 3.C. of the Information Page." (Def.'s App., at 38) (emphasis added).

Incorporating coverage in states other than Arkansas may have affected the rate Monumental charged Woods Masonry even though there was no premium charge for the "other states insurance" endorsement. In fact, it is undisputed that (1) Ms. Halverson knew at the time she quoted Woods Masonry a price on a workers' compensation policy that Woods Masonry would in all likelihood be doing subcontracting work in states outside of Arkansas, and (2) that Monumental charged Woods Masonry the highest rate permissible under Arkansas law for its workers' compensation policy. Therefore, it is likely that having additional coverage under Item 3.C. increased the rate Monumental charged Woods Masonry because Item 3.C. affords greater coverage. Read in

this light, both Items 3.A. and 3.C. have independent meaning.

In addition, even though the policy states that it covers workplaces listed in Item 3.A.—here, Arkansas—states listed in the "other states insurance" section are specifically treated "as though [those states] were listed in Item 3.A. of the Information Page." (Def.'s App., at 41, 44). The language of the contract itself, therefore, harmonizes Items 3.A. and 3.C.—not all policies include "other states insurance" coverage, but for those that do, 3.C. states should be treated no differently than 3.A. states. Ms. Halverson stated in her deposition that the importance of employing only Arkansas workers is because Arkansas is a 3.A. state. (Def.'s App., at 26). Nevertheless, the cross-reference to Item 3.A. contained in Item 3.C. makes clear, in no uncertain terms that, if an insured has "other states insurance" coverage, 3.C. states are treated as if they were 3.A. states. Thus, so long as an employee was hired in a covered 3.C. state, his or her residency for a particular job is irrelevant to the coverage issue.[7]

Moreover, even if the "other states insurance" provision were ambiguous, "[i]f the language in a policy is ambiguous, or there is doubt or uncertainty as to its meaning and it is fairly susceptible of two or more interpretations, one favorable to the insured and the other favorable to the insurer, the one favorable to the insured will be adopted." *Deal,* 889 S.W.2d at 776 (citing *Drummond Citizens Ins. Co. v. Sergeant,* 266 Ark. 611, 588 S.W.2d 419 (1979), and *see also Farm Bureau Mut. Ins. Co. v. Milburn,* 269 Ark. 384, 601 S.W.2d 841 (1980)); *accord Southern Farm Bureau Cas. Ins. Co. v. Pettie,* 54 Ark.App. 79, 924 S.W.2d 828, 834 (1996)

---

7. Furthermore, it appears that, as a matter of general practice, "[i]f the insured begins operations in one of the states listed for other states insurance, it must immediately notify the insurer. If the insurer agrees to write the coverage for the operation, *it will delete that state from the other states coverage and add it to Item 3.A.*" (Pltf.'s App., at 191).

("Provisions of a policy of insurance must be construed most strongly against the insurance company that prepared it, and if a reasonable construction could be placed on the contract that would justify recovery, it would be the duty of the court to so construe.") (citing *Travelers Indem. Co. v. Hyde*, 232 Ark. 1020, 342 S.W.2d 295 (1961); *Baskette v. Union Life Ins. Co.*, 9 Ark.App. 34, 652 S.W.2d 635 (1983)). In this case, the interpretation offered by the insured, Woods Masonry warrants consideration.[8] *See Keller v. Safeco Ins. Co.*, 317 Ark. 308, 877 S.W.2d 90, 92 (1994) ("If there is a reasonable construction that may be given to the contract that would justify recovery, it is the duty of the court to adopt it.") (citing *Arkansas Farm Bu-*

*reau Ins. Fed'n v. Ryman*, 309 Ark. 283, 831 S.W.2d 133 (1992)).

Even so, the court need not engage in conjecture regarding how Monumental fixes its rates. This is so because the court finds that the policy at issue in this case is not ambiguous. While it is true there is some limiting language with respect to *locations*, for example, Items 3.A. and 3.C., nothing in the contract restricts where an insured hires its employees. Because the plain language of the contract is clear, the court will not consider any extrinsic evidence offered by the parties.

■ Furthermore, even though there is some indication in the record that the parties discussed the states from which Woods Masonry would hire its employees,[9]

---

8. In addition, the court notes that, while Monumental offered its interpretation of the policy, the parties cannot create ambiguity. The court's duty is to determine whether ambiguity exists based on the language of the contract, not based on what the respective parties contend particular provisions in fact mean. "Merely because the parties differ on the proper construction does not establish an ambiguity." *Trujillo v. CS Cattle Co.*, 109 N.M. 705, 790 P.2d 502, 506 (1990) (citing *Vickers v. North Am. Land Devs., Inc.*, 94 N.M. 65, 607 P.2d 603 (1980)). The agreement, not the parties' arguments, is the source of ambiguity. *Cf. Martin v. Equitable Life Assurance Soc'y of the United States*, 553 F.2d 573, 574 (8th Cir.1977); *Insurance & Consulting Assocs., LLC v. ITT Hartford Ins. Group*, 48 F.Supp.2d 1181, 1192 (W.D.Mo.1999) (no ambiguity where the only argument presented was the absence of a provision allowing the agent to sue the insurance company if the insured chose to bypass the agent and deal directly with the insurer); *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F.Supp. 1504, 1515 (S.D.N.Y.1989) (holding the absence of a provision prohibiting or allowing leveraged buyouts could not, by itself, create an ambiguity that can avoid the parol evidence rule given the relevant bond indentures at issue imposed no debt limitations); *Lewis v. Finetex, Inc.*, 488 F.Supp. 12, 14 (D.S.C.1977) (silence insufficient to overcome statutory presumption directly bearing on the issue); *Southwestern Energy Co. v. Arkansas Power & Light Co.*,

1997 WL 240997, at *2 (Ark.Ct.App.1997) ("[T]he mere fact that the parties to a contract disagree on the interpretation does not render it ambiguous...."); *McMillin v. Great Southern Corp.*, 63 Tenn.App. 732, 480 S.W.2d 152, 155 (1972) (option agreement's silence as to whether the optionee must be an employee or officer at the time of exercise did not create ambiguity allowing for the consideration of parol evidence); *Patillo v. Equitable Life Assurance Soc'y*, 199 Mich.App. 450, 502 N.W.2d 696, 699 (1992); *James H. Washington Ins. Agency v. Nationwide Mut. Ins. Co.*, 95 Ohio App.3d 577, 643 N.E.2d 143, 147 (1993). *But cf. Kaldi v. Farmers Ins. Exch.*, 21 P.3d 16, 18, 21 (Nev.2001) (discussing, in addition to mere silence on termination, the termination review procedure). Therefore, even though the court has addressed Monumental's interpretation of the policy, no inferences should be drawn that the court finds support for Monumental's interpretation in the agreement nor that the court finds it to be a reasonable one, because that is simply not the case.

9. The evidence that indicates the parties discussed Woods Masonry's hiring of employees consists of (1) a facsimile message from Ms. Halverson to HCC, indicating that Woods Masonry "will not be hiring out of the state of AR when and if they go into another state"; and (2) the fact Woods Masonry treated Eischeid as an Arkansas employee for tax purposes.

these discussions "cannot alter the terms of the clearly unambiguous written agreement.... The contracting parties were knowledgeable and certainly capable of reducing their negotiations to unambiguous written terms." *C. & A. Constr. Co.*, 509 S.W.2d at 304. In this case, in fact, the policy contains a merger clause that explicitly extinguishes any provisions not contained in the written instrument. Namely, the policy provides that "[t]he only agreements relating to this insurance are stated in this policy." (Def.'s App., at 41). In addition, the policy further provides that "[t]he terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy." (Def.'s App., at 41). Therefore, even if the parties did discuss the states from which Woods Masonry would hire its employees and even if Ms. Halverson informed Ms. Woods that the Monumental policy would

cover only those employees hired in Arkansas, the agreement, by its own terms, disavows those verbal conditions.

In sum, because the court finds that the workers' compensation policy at issue in this case is unambiguous, the court will not consider extrinsic evidence. Instead, the court's role on these cross motions for summary judgment is to determine whether the Woods Masonry's workers' compensation policy through Monumental provides coverage of the Eischeid claim. *See, e.g., Oliver v. Oliver*, 70 Ark.App. 403, 19 S.W.3d 630, 633 (2000) ("When a contract is unambiguous, its construction is a question of law for the court, and the intent of the parties is not relevant.") (citing *Kennedy v. Kennedy*, 53 Ark.App. 22, 918 S.W.2d 197 (1996)). The court, therefore, turns now to this inquiry.

Monumental would have the court interpret this evidence as proof that Woods Masonry knew and understood the meaning attached to the "other states insurance" provision by Monumental. Monumental argues that, because Woods Masonry knew that Monumental interpreted the provision to exclude coverage of employees hired outside of Arkansas, Woods Masonry is bound by the interpretation conveyed to Woods Masonry. In support of its argument, Monumental cites section 201 of the Second Restatement of the Law of Contracts, which provides:

> Where the parties have attached different meanings to a promise or agreement or a term thereof, it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made
> (a) that party did not know of any different meaning attached by the other, and the other knew the meaning attached by the first party; or
> (b) that party had no reason to know of any different meaning attached by the other, and the other had reason to know the meaning attached by the first party.

RESTATEMENT (SECOND) CONTRACTS § 201(2)(a)–(b).

Monumental's argument, however, must fail. First, because the court finds that the insurance policy is unambiguous, it will not

consider extrinsic evidence to interpret the provision at issue. Second, even if the court were to consider this evidence regarding the parties' discussion with respect to the residency of Woods Masonry's employees, the court would not reach the conclusion advanced by Monumental. The fact Woods Masonry treated Eischeid as an Arkansas employee for tax withholding purposes does not inextricably lead to the conclusion that Monumental informed Woods Masonry that Woods Masonry's policy would only cover employees *hired* in Arkansas. The evidence just as easily leads to an inference that Ms. Halverson informed Ms. Woods that all Woods Masonry's employees must be Arkansas employees within the meaning that all employees must be treated as such for bookkeeping purposes.

Of course, on summary judgment, all reasonable inferences must be accorded to the nonmovant. *E.g., Wozniak v. Colonial Ins. Co.*, 46 Ark.App. 331, 885 S.W.2d 902 (1994). Thus, on summary judgment, the court would not grant or deny Woods Masonry's motion on the ground that the court would not draw the same conclusion from the facts that Monumental suggests.

### 2. Does the policy exclude employees hired outside of Arkansas?

▮ In this case, the policy is clear and unmistakable—if Woods Masonry is not self-insured or does not have another carrier when it travels to do work out of state, its workers' compensation policy with Monumental provides coverage. There is absolutely no indication that the policy is restricted to employees hired in the state of Arkansas. The unpublished Kentucky Court of Appeals case cited by Monumental supports this court's conclusion. In *Dallas Dean, Inc. v. Dallas Dean, Inc.*, 97–CA–0052–WC, 1997 WL 592410 (Ky. App. Sept.26, 1997), two workers' compensation carriers, AIK and Liberty Mutual, disputed which company was responsible for providing coverage of a work-related injury sustained by a Kentucky employee while performing work in Tennessee. The "other states insurance" provision in *Dallas Dean* was virtually identical to the disputed provision in this case. *See id.* The issue in *Dallas Dean*, however, was not whether the workers' compensation policy covered out-of-state employees. *See id.* Instead, the insurers agreed that one of them was responsible for covering the injured employee's claim; however, they did not agree on who was responsible for affording coverage because the injury occurred in Tennessee. *Id.*

In *Dallas Dean*, the employer was insured in Kentucky through AIK. *Id.* The employer procured additional coverage in Tennessee through Liberty Mutual. *Id.* Liberty Mutual paid workers' compensation benefits to the injured employee, but disputed that it was the liable insurer. *Id.* Because Dallas Dean was self-insured through AIK in Kentucky, Liberty Mutual asserted that Kentucky should have been excluded under the "other states insurance" provision in Liberty Mutual's policy. *Id.* It argued that it simply forgot to include Kentucky. *Id.* Nevertheless, Liber-ty Mutual contended that a plain reading of the policy provided coverage to workplaces, not claims. *Id.* Therefore, Liberty Mutual argued that, despite the omission of Kentucky in the "other states insurance" provision, because Dallas Dean had coverage in Tennessee through AIK, AIK, not Liberty Mutual, was responsible for providing benefits. *Id.*

The court disagreed because there was nothing in the record indicating that AIK extended coverage to Tennessee. *Id.* The court read the workers' compensation policy as extending coverage to work sites (in that case, Tennessee), and not to the residence of the employee or where the claim was filed (in that case, Kentucky). *Id.* Had the accident occurred in Kentucky, AIK would have been liable, but because it occurred in Tennessee, the plain language of the Liberty Mutual policy provided coverage. *Id.*

The *Dallas Dean* case is instructive despite the fact that the issue before the Kentucky Court of Appeals is not relevant to this case. This is so because the *Dallas Dean* opinion demonstrates that "other states insurance" provisions mean precisely what they say: if an employer is not self-insured and has not procured outside insurance, the policy in question will cover accidents that occur out-of-state so long as the external state is included—or not explicitly excluded—from coverage. The Monumental policy does not restrict in any manner the state of residency of an insured's employees. Given the ease of including such a restriction, *see C. & A. Constr. Co.*, 509 S.W.2d at 304, and given that insurance policies are liberally construed against the insurer, *see Norris*, 16 S.W.3d at 246, the conclusion is inescapable that Monumental is liable for coverage of the Eischeid claim. Nothing illustrates this conclusion better than the plain language of the policy itself:

GENERAL SECTION

. . . . .

E. Locations

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page [Arkansas]; and it covers all other workplaces in Item 3.A. [Arkansas] states unless you have other insurance or are self-insured for such workplaces.

. . . . .

PART THREE—OTHER STATES INSURANCE

A. How This Insurance Applies

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page. [Here, in pertinent part, Iowa is included].

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, *all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.*

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy *in any state not listed in Item 3.A.* of the Information Page, coverage will not be afforded *unless* we are notified within thirty days.

(Def.'s App., at 41, 44).

Because the court finds that the parties' workers' compensation policy is unambiguous and extends coverage to Woods Masonry's services in all states except those listed in Item 3.C., and because Iowa is not listed in Item 3.C., the court will grant Woods Masonry's motion for summary judgment with respect to Woods Masonry's claim seeking declaratory relief that Monumental is liable for providing coverage of the Eischeid claim. No genuine issue of material fact exists on this claim, because, as a matter of law, the policy clearly and unmistakably extends coverage irrespective of an employee's status as an Arkansas resident.

### D. Estoppel Defense

In its answer, Monumental asserted the affirmative defense that Woods Masonry's claims are barred by estoppel. Specifically, Monumental contends that Ms. Woods assured Ms. Halverson, both before and after Monumental issued the workers' compensation policy, that Woods Masonry would not be hiring employees outside the state of Arkansas. According to Monumental, it relied on these assurances in issuing and in not cancelling Woods Masonry's policy. Therefore, Monumental argues that Woods Masonry is estopped from asserting that the Eischeid claim is covered by the policy.

#### 1. Availability of estoppel as a defense in this action

Any discussions prior to the execution of the policy are, however, irrelevant to Monumental's estoppel defense. On its face, the policy merges any prior or contemporaneous oral agreements: "The only agreements relating to this insurance are stated in this policy." (Def.'s App., at 41). A merger clause is essentially an affirmation of the parol evidence rule and extinguishes all prior verbal agreements. *McNamara v. Bohn*, 69 Ark.App. 337, 13 S.W.3d 185, 188 (2000) (citing *Farmers Coop. Ass'n v. Garrison*, 248 Ark. 948, 454 S.W.2d 644 (1970)); *see generally* 11 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 33:21 (4th ed.1999) (discussing merger and integration clauses within the context of the parol evidence rule).

Furthermore, the integration clause of the workers' compensation policy stands as a bar to Monumental's assertion that, had it known Woods Masonry would hire employees in Iowa, it would have cancelled the policy. In particular, Ms. Woods contacted Ms. Halverson regarding the subcontracting job in Spencer, Iowa. Ms. Halverson testified in her deposition that, prior to issuing the certificate of insurance for the Iowa job, she asked Ms. Woods whether Woods Masonry would be hiring out-of-state employees. (Def.'s App., at 18; Halverson Dep., at 7). According to Ms. Halverson, Ms. Woods stated that Woods Masonry would be taking its own employees from Arkansas and would not be hiring additional help in Iowa. (Def.'s App., at 18; Halverson Dep., at 7).

■■■■ Because Monumental drafted the insurance policy in this case and included the merger and integration clauses, Monumental is foreclosed from asserting the defense of equitable estoppel.[10] By the policy's own terms, the agreement extinguishes any and all oral agreements made between the parties, merging prior or contemporaneous agreements into the written policy and requiring a written endorsement to modify any terms of the agreement. From this court's extensive research on this issue, whether an insurer may claim, based on alleged oral represen-

tations by the insured, that an insured is estopped from claiming coverage under a policy that contains both a merger and an integration clause is an issue of first impression. Ordinarily estoppel is asserted by an insured and is used as a sword to overcome the presence of a merger or integration clause. Arkansas courts recognize the defense of estoppel to the enforceability of an insurance contract. *Jackson v. M.F.A. Mut. Ins. Co.*, 169 F.Supp. 638 (D.C.Ark.), *aff'd*, 271 F.2d 180 (8th Cir.1959). The rationale underlying the recognition of estoppel as a defense simply does not exist when the insurer/drafter of a contract seeks to invoke its application under the facts of this case.

### 2. Elements of estoppel

■■■■ "Estoppel is a tool of equity which is used to prohibit one from retaining an advantage gained by his inequitable conduct." *Morris v. E.A. Martin Machinery Co.*, 1989 WL 103124, at *3 (Ark.Ct. App. Sept.6, 1989) (citing *Moore v. Moore*, 21 Ark.App. 165, 731 S.W.2d 215 (1987)). Under Arkansas law, four elements are necessary to establish estoppel:

(1) the party to be estopped must know the facts; (2) the party to be estopped must intend that the conduct be acted on or must act so that the party asserting the estoppel had a right to believe it was so intended; (3) the party asserting the

---

**10.** Furthermore, the Arkansas Code provides that an insurer can establish an affirmative defense to recovery under a policy, *i.e.*, may rescind a policy, by showing that there has been a misrepresentation, omission, concealment of facts, or incorrect statement in the insurance application. ARK.CODE ANN. § 23–79–107 (Michie2001). This will not prevent recovery under a policy, however, unless it is:

(1) Fraudulent; (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or (3) The insurer in good faith would not have issued the policy or contract or would not have issued a policy or contract in as large an amount

or at the same premium or rate or would not have provided coverage with respect to the hazard resulting in the loss if the facts had been made known to the insurer as required by the application for the policy or contract or otherwise.

*Id.*

The availability of a rescission action based on material misrepresentations is likely the reason why this court was unable to uncover even a single case in which the insurer claimed that the insured was estopped from recovering under an insurance policy based on oral representations made by the insured.

estoppel must be ignorant of the facts; and (4) the party asserting the estoppel must rely on the other's conduct and be injured by that reliance.

*Shelter Mut. Ins. Co. v. Kennedy,* 347 Ark. 184, 60 S.W.3d 458, 460 (2001) (citing *City of Russellville v. Hodges,* 330 Ark. 716, 957 S.W.2d 690 (1997)); *accord Brown v. State,* 288 Ark. 517, 707 S.W.2d 313, 314 (1986) (outlining elements of defense of equitable estoppel) (citing *Foote's Dixie Dandy, Inc. v. McHenry,* 270 Ark. 816, 607 S.W.2d 323 (1980); *AP & L v. Arkansas Pub. Serv. Comm'n,* 275 Ark. 164, 628 S.W.2d 555 (1982)).

██ Even assuming that Monumental is not foreclosed from asserting estoppel under the facts of this case, Monumental has failed to generate a genuine issue of material fact with respect to the requisite elements of an estoppel defense. Namely, the first element requires that the party to be estopped knew the facts, and the second element requires that the party to be estopped *intended* that its conduct be acted or relied upon by the party asserting estoppel. *Kennedy,* 60 S.W.3d at 460. While Ms. Halverson testified that she repeatedly told Ms. Woods that Woods Masonry's workers' compensation policy would only cover employees hired in Arkansas, an examination of Ms. Halverson's own testimony reveals that Ms. Woods did not respond in kind to Ms. Halverson's admonitions with an assurance that Woods Masonry would not hire outside of Arkansas. Thus, the record is devoid of any indication that Woods Masonry intended to mislead Monumental, nor that it knew it would be hiring in Iowa. In fact, the undisputed facts of the case, viewed in the light most favorable to Monumental, demonstrate that, at most, Ms. Woods "estimated" that Woods Masonry would not be hiring in Iowa. Furthermore, Woods Masonry did not travel to Iowa with the intention of hiring any workers; Eischeid showed up at the work site, was a good

worker; and Mr. Woods decided to hire him. What is more, Woods Masonry estimated that the job in Spencer, Iowa would require seven or eight employees—Woods Masonry took eight employees from Arkansas to Iowa. The evidence, therefore, supports Ms. Halverson's testimony, in which she stated that Ms. Woods did not "estimate" and "did not intend" to hire any employees in Iowa. (Def.'s App., at 18–20).

Even though Ms. Woods did not expect to hire in Iowa, Ms. Halverson apparently added Iowa to the Monumental policy on an "if-any" basis. What Ms. Halverson did not state speaks volumes: she did not testify that she informed Ms. Woods at this time that the workers' compensation policy would not cover any employees hired in Iowa, despite the fact Ms. Woods merely "estimated" Woods Masonry would not need additional labor once in Iowa. In what Ms. Halverson describes as an abundance of caution, she told HCC to add Iowa on an if-any basis to the policy, which, according to Ms. Halverson, meant that "if there was any payroll in the State of Iowa, it would be picked up at audit time, that—because I was doing it on an if-any basis, Angela [Woods] had indicated to me that there would be—that she did not estimate any Iowa payroll for that job; that everything would be Arkansas payroll. And this is just a precautionary thing that you do on workers' comp policies when you have someone going into another state, even though I have the all-other states endorsement on the application." (Def.'s App., at 18–19; Halverson Dep., at 7–8).

Nevertheless, this is a motion for summary judgment, and the court is, therefore, precluded from drawing such a negative inference from the facts because the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.,*

475 U.S. at 587, 106 S.Ct. 1348; *Quick,* 90 F.3d at 1377 (same). Still, there is no genuine issue of material fact (1) that Woods Masonry knew that it would be hiring employees in Iowa; and (2) that Woods Masonry intended Monumental to rely on its "estimate" that it would not be hiring outside of Arkansas. Therefore, even if Monumental is not itself estopped from asserting the defense of estoppel under the facts of this case, Monumental's estoppel claim is without merit, and Monumental has failed to generate a genuine issue of material fact on its estoppel claim. The court, therefore, finds that Monumental's asserted estoppel defense does not preclude this court from granting Woods Masonry's motion for summary judgment on its coverage claim.

### 3. *Use of estoppel to deny coverage on this claim*

■■■■ There is yet another reason why Monumental's estoppel claim must fail: "The Arkansas law is clear that, in contrast to the situation where a forfeiture of coverage is involved, waiver and estoppel usually cannot operate to extend coverage where none exists under the contract." *Looney v. Allstate Ins. Co.,* 392 F.2d 401, 408 (8th Cir.1968) (citing *Standard Acc. Ins. Co. v. Roberts,* 132 F.2d 794, 798 (8th Cir.1942); *Montgomery v. M.F.A. Mut. Ins. Co.,* 250 F.2d 357, 361 (8th Cir.1957); *Standard Acc. Ins. Co. v. Wilmans,* 214 F.Supp. 53, 63 (E.D.Ark.1963); *C & L Rural Elec. Coop. Corp. v. Kincade,* 183 F.Supp. 935, 940 (N.D.Miss.1960), *aff'd,* 290 F.2d 210 (5th Cir.1961); *Kinard v.*

*Mutual Benefit Health & Acc. Ass'n,* 108 F.Supp. 780, 784–85 (W.D.Ark.1952); *American Cas. Co. v. Harrison,* 96 F.Supp. 537, 550 (W.D.Ark.1951); *Bankers Nat'l Ins. Co. v. Hembey,* 217 Ark. 749, 233 S.W.2d 637, 640 (1950); *Metropolitan Life Ins. Co. v. Stagg,* 215 Ark. 456, 221 S.W.2d 29, 32 (1949); *Hartford Fire Ins. Co. v. Smith,* 200 Ark. 508, 139 S.W.2d 411, 413 (1940)); *accord Arkansas Power & Light Co. v. Home Ins. Co.,* 602 F.Supp. 740, 745 (D.C.Ark.1985) ("Waiver and/or estoppel cannot act to create coverage under an insurance policy where coverage did not initially exist.") (citing *Looney,* 392 F.2d at 401; *Peoples Protective Life Ins. Co. v. Smith,* 257 Ark. 76, 514 S.W.2d 400 (1974)). While this reasoning is most often employed against estoppel claims asserted by the insured and explains why the insured cannot use estoppel to create an insurance contract, *see, e.g., Braun v. Annesley,* 936 F.2d 1105, 1109 (10th Cir.1991), the rationale applies equally to a situation such as is found in this case, in which the insurer is denying coverage of a claim that is clearly covered by the contract. In essence, Monumental is attempting to use estoppel to add a condition where coverage is plainly available. Estoppel is unavailable for this purpose. *Cf. Looney,* 392 F.2d at 408.

### E. *Attorneys' Fees And Penalties*

■■■■ In addition to seeking a declaration of coverage of the Eischeid claim, Woods Masonry seeks penalties and attorneys' fees pursuant to Arkansas Code section 23–79–208.[11]

---

11. A related statutory provision provides for reasonable attorneys' fees in declaratory judgment actions:

(a) In all suits in which the judgment or decree of a court is against a life, property, accident and health, or liability insurance company, either in a suit by it to cancel or lapse a policy or to change or alter the terms or conditions thereof in any way that may have the effect of depriving the holder of the policy of any of his or her rights thereunder, or in a suit for a declaratory judgment under the policy, or in a suit by the holder of the policy to require the company to reinstate the policy, the company shall also be liable to pay the holder of the policy all reasonable attorney's fees for the defense or prosecution of the suit, as the case may be.

(b) The fees shall be based on the face amount of the policy involved.

(c) The attorney's fees shall be taxed by the court where the suit is heard on original action, by appeal or otherwise, and shall be taxed up as a part of the costs therein and collected as other costs are or may be by law collected.

ARK.CODE ANN. § 23–79–209. Thus, in declaratory judgment actions brought by the insurer, the 12% penalty provided for under section 23–79–208 is unavailable, and only attorneys' fees are allowable. *See id.*

The District Court for the Western District of Arkansas held in *Silverball Amusement, Inc. v. Utah Home Fire Insurance Co.,* 842 F.Supp. 1151, 1166 (W.D.Ark.), *aff'd,* 33 F.3d 1476 (8th Cir.1994), that the 12% penalties provided for under section 23–79–208 were unavailable in a declaratory judgment action *brought by the insured* after its insurer refused to indemnify or defend the insured against a claim that the insured negligently hired and supervised an employee who sexually molested a child. The district court held that the insurer indeed had a duty to defend and indemnify the insured and awarded attorneys' fees under section 23–79–209, specifically rejecting the application of section 23–79–208, which would have provided for penalties, because the insured's action was one for declaratory judgment. *Id.* at 1166. The court stated that "in a declaratory judgment action, the awarding of attorney's fees is proper under A.C.A. 23–79–209, which does not provide for the 12% penalty set forth in A.C.A. 23–79–208." *Id.* (citing *Shelter Mut. Ins. v. Smith,* 300 Ark. 348, 779 S.W.2d 149 (1989)).

While *Silverball Amusement* may initially appear persuasive on this issue, a closer reading reveals that the Arkansas district court's holding that section 23–79–209 applies to all declaratory judgment actions and precludes the imposition of penalties under section 23–79–208 is more limited in scope than may be immediately apparent from the broad language of the opinion. In *Silverball Amusement,* the court's order required Utah Home to defend Silverball, to pay any damages that may be incurred in that action, and to reimburse Silverball for the costs and attorneys' fees incurred in bringing the declaratory judgment action against Utah Home. *Id.* The order did not require the payment of any insurance proceeds because the tort action against the insured had not yet resulted in a judgment against the insured.

In this case, the court's order requires Monumental to provide coverage of the Eischeid claim—this case, therefore, involves more than a pure declaratory judgment action, which "orders nothing be done." *See Newcourt Fin., Inc. v. Canal Ins. Co.,* 341 Ark. 181, 15 S.W.3d 328, 332 n. 2 (2000) (citing ARK. CODE ANN. §§ 16–111–101 *et seq.*). The commentary to Arkansas's declaratory judgment act illuminates a common understanding of a declaratory judgment: "The judgment is not based on any wrong already done or any breach committed. It is not required to be executed, as it orders nothing be done. It simply declares rights and duties so that parties may guide themselves in the proper legal road, and, in fact, and in truth, avoid litigation." *Id.* (citing ARK.CODE ANN. §§ 16–111–101 *et seq.*).

In *Newcourt Financial, Inc. v. Canal Insurance Co.,* the insurer brought a declaratory judgment action, seeking a judgment that it was not liable to the insured in an automobile insurance claim because the insured committed arson. *Id.* at 329. The insured brought a counterclaim for the payment of the insurance claim. *Id.* After the jury returned a verdict on the declaratory judgment action in favor of the insured finding there was no arson, the trial court entered judgment, ordering the insurer to pay the insurance policy proceeds and awarding attorneys' fees under section 23–79–209. *Id.* at 330. The insured appealed, arguing that the trial court erred in failing to award the statutory penalty of 12 percent under section 23–79–208. *Id.*

On review, the Arkansas Supreme Court held that the court should have imposed penalties under section 23–79–208 because "[b]y ordering that Canal [the insurer] pay benefits to Newcourt, the circuit court effectively granted Newcourt's counterclaim under section 23–79–208. . . . [B]ecause the court ordered payment under the policy, it necessarily did so pursuant to the counterclaim for payment for a 'loss' under section 23–79–208 since the declaratory-judgment action would not provide such relief." *Id.* at 332. In this case, the court's order requires Monumental to pay the benefits entitled to Eischeid for his work-related injury. The case, therefore, is similar to *Newcourt Financial* in that, while technically a declaratory judgment action, the effect of the order involves a "loss" under section 23–79–208 and an order of payment.

Similarly, in *Home Insurance Co. v. Crawford,* 251 Ark. 843, 475 S.W.2d 889 (1972), the Arkansas Supreme Court held that the imposition of penalties under section 23–79–208's predecessor was proper, despite the fact

That provision provides for the following relief:

(a)(1) In all cases where loss occurs and the cargo, property, marine, casualty, fidelity, surety, cyclone, tornado, life, accident and health, medical, hospital, or surgical benefit insurance company and fraternal benefit society or farmers' mutual aid association or company liable therefor shall fail to pay the losses within the time specified in the policy after demand is made, the person, firm, corporation, or association shall be liable to pay the holder of the policy or his or her assigns, in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all

that the form of the suit was a declaratory judgment action. In that case, Home Insurance brought suit to determine its liability under a fire insurance policy after the insured's property was damaged in a fire. *Id.* at 844, 475 S.W.2d 889. The insured counterclaimed for payment under the policy. *Id.* at 845, 475 S.W.2d 889. The court held that, even though the suit was one for declaratory judgment brought by the insurer, nothing in section 23–79–209 "prevents the allowance of the [12%] penalty upon a counterclaim for a loss." *Id.* Thus, so long as the court finds that a monetary loss occurred, that payment is due, and that the insurer failed to make payment within the time specified in the policy after demand was made, penalties are properly assessed under section 23–79–208. *See id.*

Furthermore, a careful reading of the statute supports this court's conclusion that section 23–79–208 applies to this action. Section 23–79–209(a) consists of two separate provisions, one applicable to suits brought by the insurer and one applicable to suits brought by the insured. The first part of section 23–79–209, by a plain reading of the statute, applies only to suits brought by the insurer:

In all suits in which the judgment or decree of a court is against a life, property, accident and health, or liability insurance company, either *in a suit by it [the insurance company] to cancel or lapse a policy or to change or alter the terms or conditions there-*

reasonable attorney's fees for the prosecution and collection of the loss.

.　　.　　.　　.　　.

(b) When attorney's fees are due a policyholder or his or her assigns, they shall be taxed by the court where the same is heard on original action, by appeal or otherwise, and shall be taxed up as a part of the costs therein and collected as other costs are or may be by law collected.

.　　.　　.　　.　　.

ARK.CODE ANN. § 23–79–208.

The parties agree that Arkansas law applies to the substantive legal issues presented by this lawsuit. Where jurisdiction

*of in any way that may have the effect of depriving the holder of the policy of any of his or her rights thereunder, or in a suit for a declaratory judgment under the policy,* ... the company shall also be liable to pay the holder of the policy all reasonable attorney's fees for the defense ... of the suit.... ARK.CODE. ANN. § 23–79–209 (emphasis added).

The statute applies to suits brought by the insured only when the lawsuit is "a suit by the holder of the policy to require the company to reinstate the policy." *Id.* In that situation, "the company shall also be liable to pay the holder of the policy all reasonable attorney's fees for the ... prosecution of the suit." *Id.* The Arkansas Supreme Court has also recognized this distinction, stating "[f]rom its plain language section 23–79–209 applies to actions where judgment is ultimately rendered against certain insurance companies in suits initiated by the companies. It specifically includes a declaratory-judgment action. It also applies to suits filed by holders of policies seeking to reinstate a canceled policy." *Newcourt Fin., Inc.,* 15 S.W.3d at 331.

Thus, because Woods Masonry is not suing to reinstate a cancelled policy, section 23–79–209 does not apply to this action. *But see Arkansas Nursing Home Employee Benefit Trust v. Hudson,* 1990 WL 89396, at *5 (Ark. Ct.App. June 27, 1990) (unpublished opinion) (holding trial court erred in awarding penalties under section 23–79–208 in action for declaratory judgment brought by insured).

is premised on diversity of citizenship, it is axiomatic that the federal district court must apply state substantive law and federal procedural law. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In this case, Monumental argues that the Arkansas statute providing for penalties and attorneys' fees is procedural and, therefore, does not apply to Woods Masonry's action. Woods Masonry, of course, disagrees and characterizes the statutory provision as substantive.

### 1. In general, attorneys' fees are substantive for Erie purposes

▇▇▇ While there are arguably distinctions between a statutory provision that merely provides for attorneys' fees and the Arkansas provision that also imposes a penalty on an insurer, "statutes allowing for recovery of attorney's fees are substantive for *Erie* purposes." *McMahan v. Toto,* 256 F.3d 1120, 1132 (11th Cir.2001) (citing *All Underwriters v. Weisberg,* 222 F.3d 1309, 1311–12 (11th Cir. 2000), *with accord in MRO Communications, Inc. v. American Tel. & Tel. Co.,* 197 F.3d 1276, 1282 (9th Cir.1999) ("In an action involving state law claims, we apply the law of the forum state to determine whether a party is entitled to attorneys' fees, unless it conflicts with a valid federal statute or procedural rule.") (citation omitted); *In re King Resources Co.,* 651 F.2d 1349, 1353 (10th Cir.1981) ("Thus in diversity cases generally, and certainly in this circuit, attorney fees are determined by state law and are substantive for diversity purposes.")); *accord Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (holding that as long as state law "does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the

state should be followed"); *Jones v. Denver Post Corp.,* 203 F.3d 748, 757 (10th Cir.2000) (in the Tenth Circuit, attorney fee statutes are considered substantive for purposes of a diversity action or a pendent state law claim); *Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency,* 123 F.3d 1351, 1352 (10th Cir.1997) (matter of attorney fees in diversity suit is substantive and is controlled by state law); *Mitzel v. Westinghouse Elec. Corp.,* 72 F.3d 414, 417 (3d Cir.1995) (generally, right of party or attorney to recover attorney fees from another party in diversity action is matter of substantive state law); *Mangold v. California Public Utilities Comm'n,* 67 F.3d 1470, 1478 (9th Cir.1995) (utilizing contingency fee multiplier available under state law even though prohibited under federal law and reasoning that state law was substantive and to hold that multiplier would be available in state court, but not in federal court, would likely lead to forum shopping); *Public Serv. Co. v. Continental Cas. Co.,* 26 F.3d 1508, 1520 (10th Cir.1994) (right to recover attorney fees is substantive and thus determined by state law in diversity cases); *Bristol Tech., Inc. v. Microsoft Corp.,* 127 F.Supp.2d 64, 66 (D.Conn.2000) ("In diversity cases, attorney's fees are considered substantive and are controlled by state law.") (citing *United States v. One Parcel of Prop. Located at 414 Kings Highway,* 1999 WL 301704, at *4 (D.D.C. May 11, 1999) (citations omitted); *Kaplan v. Rand,* 192 F.3d 60, 70 (2d Cir.1999)); *Walsh v. Kelly,* 203 F.R.D. 597, 598–99 (D.Nev.2001) (state statutes allowing for recovery of attorney fees are considered substantive for *Erie* purposes, and thus they will be applied in diversity cases unless they conflict with a valid federal statute or procedural rule).

▇▇▇ Application of section 23–79–208 comports with United States Supreme

Court precedent. As the Supreme Court has stated:

> [I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.

*Alyeska Pipeline,* 421 U.S. at 259 n. 31, 95 S.Ct. 1612 (citation and quotation omitted). Section 23–79–208 indeed reflects a substantial policy of the state to discourage vexatious denials and delays on the part of insurers, and the state law does not conflict with any federal statutes. Furthermore, because the right to the recovery of attorneys' fees is substantive, this court must look to Arkansas choice-of-law rules to determine whether Arkansas courts would apply the statute under the circumstances of this case. *See, e.g., Toto,* 256 F.3d 1120, 1132. As will be discussed in greater detail below, Arkansas courts would undoubtedly apply section 23–79–208 to Woods Masonry's action; accordingly, so, too, will this court.

Nevertheless, the court observes that this question is not as simple as it may appear at first blush because of statements made by the Arkansas Supreme Court and the Arkansas General Assembly, to the effect that section 23–79–208 is procedural. However, for the reasons stated below, section 23–79–208 must apply in this action to achieve an equitable administration of law, to advance Arkansas public policy, and to discourage forum shopping.

### 2. *Arkansas Supreme Court's treatment of section 23–79–208*

In amending the penalties and attorneys' fees statute in 1999, the Arkansas legislature noted that "[i]t is the express intent of the General Assembly that this Act be applied retroactively to pending cases, as it is remedial and procedural in nature." 1999 Ark.Acts 135, § 2. Similarly, the Arkansas Supreme Court has, on at least four separate occasions, referred to the imposition of the statutory penalties pursuant to section 23–79–208 as a "procedural" matter. *See Shepherd v. State Auto Prop. & Cas. Ins. Co.,* 312 Ark. 502, 850 S.W.2d 324, 329 (1993) ("The allowance of the statutory penalty and attorneys' fees is penal in nature and a procedural matter.") (citing *USAA Life Ins. Co. v. Boyce,* 294 Ark. 575, 745 S.W.2d 136 (1988)); *Boyce,* 745 S.W.2d at 138 ("The allowance of the statutory penalty and attorney's fees is penal in nature, and is a procedural matter governed by the laws of the State of Arkansas.") (citing *American Physician's Ins. Co. v. Hruska,* 244 Ark. 1176, 428 S.W.2d 622 (1968)); *Hruska,* 428 S.W.2d at 627–28 (describing Missouri statute for attorneys' fees as a statute providing for costs, which is a procedural matter governed by the law of the forum); *New Empire Life Ins. Co. v. Bowling,* 241 Ark. 1051, 411 S.W.2d 863, 865 (1967) (awarding penalties and costs pursuant to section 23–79–208's predecessor even though applying Missouri law to substantive issues of case and stating that "[t]he question is essentially a procedural one, to be governed by the law of the forum.") (citing *Aetna Cas. & Surety Co. v. Simpson,* 228 Ark. 157, 306 S.W.2d 117 (1957)). Even though the Arkansas Supreme Court's statements with respect to the procedural nature of the Arkansas statute providing for attorneys' fees and penalties were made in *Shepherd* and in *Boyce* without any analysis, a common thread ties each of the cases together, which renders blurry the seemingly clear pronouncement of the Arkansas legislature and state supreme court—if an insured has sufficient ties to the state of Arkansas, Arkansas courts do not hesitate in assessing penalties and attorneys' fees against insurers under section 23–79–208 (if the statutory prerequisites are met, of course).

### a. Relevant caselaw

In *Bowling,* an Arkansas beneficiary brought suit against a Missouri insurer for death benefits payable under the accident policy. *Bowling,* 411 S.W.2d at 863–64. Namely, Fred Bowling brought suit to recover benefits under the accident policy insuring his son, Jerry Bowling. *Id.* The insurer was a Missouri corporation, while Fred Bowling, (the plaintiff) was an Arkansas resident. *Id.* at 864. Fred Bowling applied for a policy on his son by depositing the insurance application in the mail. *Id.* At the time of Jerry Bowling's death, he was living in Arkansas but was working in Oklahoma. *Id.* While in Oklahoma, Jerry Bowling died in a car accident. *Id.* The insurer argued that his death was not "accidental" and, thus, not subject to coverage under the policy, because, according to the insurer, Jerry Bowling's death was the result of Jerry Bowling's irresponsible driving after drinking several beers and driving at excessive speeds. *Id.*

The trial court found that Missouri law was controlling, and the parties proceeded to trial. *Id.* After a trial on the merits, the jury returned a verdict in favor of Fred Bowling. *Id.* The trial court, however, rejected the plaintiff's request that the 12 percent penalty and attorneys' fees be assessed against the insurer under section 23–79–208's predecessor, section 66–3238. *Id.* at 865. The trial court determined that the plaintiff was not entitled to attorneys' fees under Missouri law because the applicable Missouri statute required a showing that the insurer's delay in dispersing the proceeds was "vexatious." *Id.* The Arkansas Supreme Court reversed the tri-

al court's holding, ruling that Arkansas law, not Missouri law, should have been applied to the case at bar, and, therefore, penalties and fees should have been assessed. *Id.* The court held that the question of which attorneys' fees statute to apply was "essentially a procedural one" and that because Jerry Bowling was an Arkansas resident, "the action [was] properly maintainable in Arkansas" and, therefore, there was "an adequate basis for the application of our [the Arkansas] statute." *Id.* Thus, the court applied the Arkansas statutory provision because the plaintiff had an adequate connection to the state of Arkansas to justify the protection afforded by the statute. *See id.*

In *Hruska,* the plaintiffs brought an action to recover an excessive amount exacted by American Physicians Insurance Co. in connection with a transaction that the plaintiffs contended was a usurious loan. *Hruska,* 428 S.W.2d at 623. The entire case was tried, without objection, under Missouri law, which was the state in which the loan was executed. *See id.* After a jury verdict in favor of the plaintiffs, the trial court denied the plaintiffs' motion for attorneys' fees, and the plaintiffs appealed. *Id.* at 627.

The Missouri statute in question provided for reasonable attorneys' fees against any person who violated Missouri law by issuing a usurious loan. *Id.* Specifically, the statute provided that such defendants " 'shall be adjudged to pay the costs of the suit, including a reasonable attorney's fee to be determined by the court.' " *Id.* (quoting Missouri statute). The court's analysis was clear: because the Missouri statute at issue allowed for the award of attorneys' fees as costs,[12] Arkansas courts

---

12. It should be noted that section 23–79–208 does not allow for the recovery of attorneys' fees "as costs," which was the basis of the *Hruska* court's finding that the Missouri provision at issue was procedural. *Compare* Ark. Stat.Ann. § 23–79–208 (penalty and attorneys' fees provision), *with Hruska,* 428 S.W.2d at 627–28 (reasoning that because attorneys' fees were allowed as part of costs, the Missouri statute was procedural). The procedur-

treated the statute as a matter of procedural law because, under Arkansas law, the entitlement to costs is a procedural matter. *Id.* at 627–28. Absent an Arkansas statute providing for attorneys' fees in usurious loan cases, the plaintiffs were not entitled to attorneys' fees because, even though the court applied Missouri law to the substantive issues of the case, costs were procedural and subject to Arkansas law. *Id.* Because no Arkansas statute provided for attorneys' fees in usurious loan cases, the court held that there was no basis upon which to award fees. *Id.* at 628.

Notably in *Hruska,* there is no indication of an Arkansas connection between the insureds and the state of Arkansas. The plaintiffs, Hruska and Menas, were Missouri residents. *See id.* at 623 (while the court does not expressly state the plaintiffs were Missouri residents, there are several reference to them "going back to Kansas City, Missouri" and, also, the plaintiffs were, respectively, the president and secretary of a Missouri corporation). On appeal, the appellant argued that Louisiana, not Missouri, law should have applied because the loan was arguably executed in New Orleans, Louisiana. *Id.* at 627. The appellant, however, failed to preserve this issue for appeal. *Id.* In any event, the significance of the choice-of-law issue and the residency of the plaintiffs is that the case lacks a readily apparent connection to Arkansas. Even if this court were to infer that the appellant, American

Physicians Insurance Co., was an Arkansas corporation, and thus providing the basis of jurisdiction in Arkansas, the *Hruska* court was not called upon to protect an Arkansas resident by awarding attorneys' fees because the appellees, Hruska and Mena, were not Arkansas residents. Furthermore, because no Arkansas statute provided for attorneys' fees in a case such as *Hruska* involving a usurious loan, the Arkansas Supreme Court was not asked to determine whether the statute at issue in Woods Masonry's case, section 23–79–208, would have provided relief under the circumstances of the *Hruska* case.

*Boyce,* decided in 1988, is arguably the most telling case of the Arkansas Supreme Court's treatment of section 23–79–208, explicitly stating what was implicit in *Bowling* and *Hruska* —if an insured has sufficient connection to Arkansas, the assessment of fees and penalties under section 23–79–208 is proper. *Boyce,* 294 Ark. at 579–80, 745 S.W.2d 136. In *Boyce,* the insured, who was an active U.S. army service member stationed in Georgia, was murdered by his wife. *Id.* at 576, 745 S.W.2d 136. The insured's wife was the primary beneficiary, but the insured's attorney, Sam Boyce, was the alternate beneficiary. *Id.* He was an Arkansas resident. *Id.*

The insured had three life insurance policies, which were issued while he was a resident of Kansas, Arkansas, and then Virginia. *Id.* On two of the three policies,

al nature of costs provisions has been recognized by the Eighth Circuit. *See Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co.,* 19 F.3d 431, 437 (8th Cir.1994) (applying procedural Nebraska statute to insurance case brought in the District Court of Nebraska on diversity where Nebraska statute allowed "the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his or her recovery, *to be taxed as part of the costs* ") (emphasis added).

At the same time, however, the Eighth Circuit has held that the penalties and attorneys' fees recoverable under section 23–79–208's predecessor, section 66–3238, are includable in computing amount in controversy for the purpose of determining diversity jurisdiction. *Peacock & Peacock v. Stuyvesant Ins. Co.,* 332 F.2d 499, 502 (8th Cir.1964). The fact that the fees and penalties are included in determining jurisdictional amount indicates that the remedies provided under the Arkansas statute, unlike mere costs, are substantive.

the insured listed an Arkansas address as his permanent address. *Id.* at 577, 745 S.W.2d 136. The home office of the insurance company was San Antonio, Texas. *Id.* at 576, 745 S.W.2d 136. Boyce filed suit in Arkansas on behalf of the insured's estate. *Id.* at 577, 745 S.W.2d 136. Boyce sought the amounts due under the life insurance policies, including accidental death benefits, which the insurer initially disputed. *Id.* After trial, the trial court entered judgment against the insurer and awarded penalties and attorneys' fees against the insurer. *Id.* The insurer appealed, arguing that penalties and fees could not be awarded under section 23–79–208 because the policies were issued in Texas, matured outside the state of Arkansas, the insured resided outside the state of Arkansas, and the primary beneficiary resided outside the state of Arkansas. *Id.* at 579, 745 S.W.2d 136. Thus, the insurer contended that there was not an adequate connection between the policy and Arkansas to assess fees and penalties under Arkansas law. *See id.*

The Arkansas Supreme Court disagreed, finding that "Arkansas had the requisite connection for its courts to impose the statutory penalty and attorney's fees under the facts of this case." *Id.* at 580. Because the court determined that the statute allowing penalties and attorneys' fees related to the performance of the insurance contract, the court looked to see whether the insured and the beneficiary (here, the alternate beneficiary) were *entitled to performance* in Arkansas. *Id.* In *Boyce*, the insured and the beneficiary were indeed entitled to performance because the insured's permanent home was in Arkansas and the alternate beneficiary to whom the benefits were paid was an Arkansas resident. *Id.*

Most recently in its 1993 *Shepherd* decision, the Arkansas Supreme Court stated again that the penalty and attorneys' fees statute was "penal in nature and a procedural matter." *Shepherd,* 850 S.W.2d at 329. In that case, two cars collided in a tragic accident that resulted in the deaths of both the drivers, Holcombe and Van–Beber, and two of Holcombe's passengers, as well as permanent injury to a third Holcombe passenger. *Id.* at 325. Van–Beber's car was insured for $50,000 bodily-injury liability coverage. *Id.* Holcombe's vehicle, however, carried underinsurance coverage with a policy limit of $300,000. *Id.* A jury determined that Van–Beber, who was intoxicated and driving the wrong direction on an interstate, was 100% at fault. *Id.* Consequently, the injured passenger and the estates of the other individuals demanded the entire $300,000 from Holcombe's underinsurance policy. *Id.* However, because they collected $50,000 from Van–Beber's insurance policy, as well as workers' compensation benefits from their employer,[13] Holcombe's insurance carrier refused this demand, insisting that the proceeds from Holcombe's underinsurance policy be offset by the recovery under both Van–Beber's policy and the workers' compensation benefits. *Id.* Ultimately, the court determined that an offset of $50,000 for Van–Beber's insurance was appropriate but that public policy prohibited a set-off for any workers' compensation benefits received by the parties. *Id.* at 326. And, while the trial court awarded the plaintiffs attorneys' fees, it held that the 12 percent penalty under section 23–79–208 did not apply because the offset of collateral benefits against underinsured benefits was a matter of first impression in Arkansas; thus, the court held that the insurer had a

---

**13.** Holcombe and her three passengers were traveling in the course of their duties as employees of Arkansas Best Corporation. *Shep-*

*herd,* 850 S.W.2d at 325. In sum, Arkansas Best Corporation paid $181,535 in workers' compensation benefits to these individuals. *Id.*

bona fide good faith defense to the imposition of penalties. *Id.*

The Arkansas Supreme Court reversed, holding that penalties should have been assessed against the insurer. *Id.* at 329. And while the court characterized the statutory penalty as "procedural," the court briefly examined the purpose of the statute, noting that "[t]he punitive nature of the statute is directed against the unwarranted delaying tactics of insurers." *Id.* (citing *Simmons First Nat'l Bank v. Liberty Mut. Ins. Co.*, 282 Ark. 194, 667 S.W.2d 648 (1984)). Even though the precise issue of a setoff for workers' compensation benefits had not been decided when the insurer refused to pay the underinsured benefits in *Shepherd*, the state's public policy "could [have been] sufficiently extrapolated from analogous cases and from the underinsured motorist statute itself"; therefore, the court ruled that the insurer's good faith argument did not protect the insurer from imposition of the 12 percent penalty. *Id.*

### b. Rules drawn from caselaw

Two salient points that instruct this court's analysis can be drawn from the foregoing line of cases. First, the Arkansas Supreme Court emphasized the penal nature of the statute. *Id.* This recognition of the punitive bent of section 23–79–208 is in accord with both prior and subsequent decisions that have explored the underlying purpose of the section. *E.g., National Standard Ins. Co. v. Westbrooks*, 331 Ark. 445, 962 S.W.2d 355, 357 (1998) ("The purpose of § 23–79–208 we have said, is to punish the unwarranted delaying tactics of insurance companies.") (citing *Farm Bureau Mut. Ins. Co. v. David*, 324 Ark. 387, 921 S.W.2d 930 (1996)); *State Farm Mut. Auto. Ins. Co. v. Thomas*, 316 Ark. 345, 871 S.W.2d 571, 573 (1994) (stating that the penalty nature of this provision is directed against insurers' unwarranted delaying tactics) (citing *Simmons First Nat'l*

*Bank*, 667 S.W.2d at 648); *Shepherd*, 850 S.W.2d at 329 (stating that purpose of statute is to penalize insurers for utilizing vexatious delay tactics); *McHalffey v. Nationwide Mut. Fire Ins. Co.*, 76 Ark.App. 235, 61 S.W.3d 231, 234 (2001) (same) (citing *Shepherd*, 850 S.W.2d at 329).

The penal nature of the statute is also reflective of Arkansas public policy. The *Boyce* court noted:

> The legislature has recognized a social and moral purpose in providing for the allowance of a statutory penalty and attorney's fees in litigation between insured and insurer. These reasons include discouraging oppressive delay in recognition of liability, deterring arbitrary or capricious denial of claims, and insuring the ability of claimants to obtain legal representation.

*Boyce*, 745 S.W.2d at 138 (citing *Aluminum Co. of America v. Henning*, 260 Ark. 699, 543 S.W.2d 480 (1976)). Thus, inasmuch as section 23–79–208 is the legislature's expression of its intent to discourage vexatious delays on the part of insurers, Arkansas public policy counsels in favor of this court's application of section 23–79–208 because, under general choice-of law principles, this court should strive to effectuate Arkansas public policy. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAW § 6(2) (1969) (listing public policy as factor relevant to the choice of the applicable rule of law).

■ The second point drawn from Arkansas caselaw regarding section 23–79–208 is that Arkansas courts would unquestionably apply section 23–79–208 to this case had it been brought in Arkansas courts in light of the insured's status as an Arkansas corporation, the fact that formation of the contract took place in Arkansas, and the fact Eischeid was treated as an Arkansas employee for tax withholding purposes. This is the "something more"

than venue and jurisdiction to which the *Boyce* court referred, and it provides a solid basis upon which to advance Arkansas public policy. *See Boyce*, 294 Ark. at 580, 745 S.W.2d 136 (finding insured, an Arkansas resident, and beneficiary, also an Arkansas resident, were entitled to performance of contract in Arkansas, which included application of section 23–79–208). The rationale underlying choice-of-law rules in diversity cases is clear: "The fortuity of diverse citizenship should not subject a litigant to legal burdens different from those that a state court would impose." *Stoner v. Presbyterian Univ. Hosp.*, 609 F.2d 109, 111 (3d Cir.1979). The Supreme Court reiterated this rationale in *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965): "the twin aims of the *Erie* rule[ ][are] discouragement of forum-shopping and avoidance of inequitable administration of the law." *Hanna*, 380 U.S. at 468, 85 S.Ct. 1136. In this case, the "twin aims" of the *Erie* doctrine can only be met if this court applies section 23–79–208. Because Arkansas courts would apply section 23–79–208 to Woods Masonry's action against Monumental had Woods Masonry sued in Arkansas state court, the result should not differ merely because Woods Masonry exercised its constitutional right to seek redress in a federal forum based on diversity of citizenship. *See id.*

### c. Summary

Because section 23–79–208 is an expression of Arkansas public policy and because Arkansas state courts would apply section 23–79–208 to this case, this court, too, will apply the statutory penalty and attorneys' fees provision to this action. Applying *Hanna*, the availability of a penalty and attorneys' fees in state court, but not in federal court, would likely lead to forum-shopping. As this case illustrates, if section 23–79–208 is formalistically categorized as procedural, a significant difference

in fees would be available in state court but not in federal court—an "inequitable administration of the law." The recovery of the 12% penalty and attorneys' fees is an inherent part of the substantive right to the fee itself, and a state right to an attorneys' fee reflects a substantial policy of the state. *Cf. Chambers v. NASCO*, 501 U.S. 32, 51–55, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Accordingly, Monumental's denial of the Eischeid claim is subject to penalties and attorneys' fees under section 23–79–208.

However, the parties have not briefed the issue of the amount of attorneys' fees, nor is the court cognizant of the precise amount of the insurance claim. The court, therefore, cannot, at this time, assess penalties or fees in any particular amount. It is the court's hope that the parties attempt to reach an agreement on this issue. In the event that the parties cannot agree on this amount, the parties will file a motion with this court, pursuant to the schedule established below and pursuant to the Local Rules.

### III. CONCLUSION

The court finds that the language of the workers' compensation policy issued by Monumental is unambiguous. Accordingly, the court limited its interpretation of the agreement to the policy's four corners. Even after an exhaustive examination of each provision of the policy, the court was unable to discern any evidence in the language of the agreement to the effect that the policy was limited to employees who were both Arkansas residents and hired by Woods Masonry in Arkansas. Therefore, the court finds that the Monumental policy provides coverage of the Eischeid claim despite Eischeid's status as an Iowa resident hired in Iowa, which was the basis of Monumental's denial of Woods Masonry's claim. Because there is no genuine issue

of material fact with respect to whether the workers' compensation policy at issue in this case provides coverage (the clear language of the policy covers all of Woods Masonry's employees, irrespective of their state of residence), the court **grants Woods Masonry's Motion For Summary Judgment on its First Claim seeking a declaratory judgment of the coverage issue and declares that the Monumental policy affords coverage of the Eischeid accident.**

Furthermore, the parties filed cross-motions for summary judgment regarding whether section 23–79–208 was applicable to this case. The court finds that the statute is substantive, that *Hanna* and its progeny dictate its application, and that Arkansas public policy counsels in favor of its application. Accordingly, **the court denies Monumental's Motion For Summary Judgment but grants Woods Masonry's Motion For Summary Judgment on Woods Masonry's claim regarding the applicability of Section 23–79–208.** Because loss occurred and Monumental failed to pay the loss after demand was made, Monumental is subject to the imposition of both the 12 % penalty and reasonable attorneys' fees associated with this litigation.

However, Local Rule 54.2 prescribes the procedure for the recovery of attorneys' fees. If the parties are unable to come to agreement on this issue, Woods Masonry will follow the procedures set forth in the Local Rules and will **file a motion for attorneys' fees and penalties under section 23–79–208, and shall have to and including May 14, 2002** in which to do so.

**IT IS SO ORDERED.**